[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 14, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-14689

_____

D.C. Docket No. 99-06244 CR-WDF

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

TERRY COFIELD,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

**(November 14, 2001)**

Before BARKETT and HULL, Circuit Judges, and LIMBAUGH[*], District Judge.

PER CURIAM:

_____

[*] Honorable Stephen N. Limbaugh, U.S. District Judge for the Eastern District of Missouri, sitting by designation.

The United States appeals an order granting Terry Cofield's motion to suppress evidence in his criminal case for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). United States v. Cofield, 108 F. Supp. 2d 1374 (S.D. Fla. 2000). This case involves a warrantless search of Cofield's luggage at a train station. Whether or not that search violates the Fourth Amendment, and thus whether suppression is required, depends upon whether one believes the version of the events advanced by the government or by Cofield. The government contends that Cofield abandoned his luggage at the train station and thus the search of the luggage was constitutional, while Cofield asserts that the bags were taken from him and searched without his consent.

The district court referred Cofield's motion to suppress to a magistrate judge in order to hear testimony, make credibility determinations, and submit a report and recommendation. At this hearing, the government offered the testimony of two of the law enforcement officers who stopped Cofield at the train station, while Cofield and his girlfriend, who was also present at the train station, testified on Cofield's behalf. After hearing the testimony of all of the witnesses, the magistrate judge found the testimony of the government's witnesses to be "fully credible" based upon "each officer's demeanor and manner of testifying, as well as the consistency and logic of their rendition of the events." Conversely, the magistrate

judge found Cofield's testimony to be "internally inconsistent and somewhat at odds with the testimony of [his girlfriend]." Accordingly, the magistrate judge recommended that the district court deny the motion to suppress.

The district court, however, expressly rejected the magistrate judge's credibility findings without convening a second evidentiary hearing and granted Cofield's motion finding (1) that Cofield's testimony was credible based upon Cofield's prior consistent statements, and (2) in the alternative, that even crediting the government's version of the facts as true, the government had failed to show as a matter of law that Cofield abandoned his luggage. This interlocutory appeal followed.

On appeal, the government argues that the district court committed reversible error by rejecting the magistrate judge's express credibility findings without first rehearing the disputed testimony, and that the testimony of the government witnesses, if credited as true, demonstrates that Cofield abandoned his luggage. We consider each argument in turn[1].

1.    Rejection of the magistrate judge's credibility findings

Whether the district court may wholly reject a magistrate judge's credibility

---

[1]The other arguments raised by the government are without merit and thus are not discussed.

3

findings without rehearing witness testimony is an issue of law which we review de novo. See, e.g., United States v. Register, 182 F.3d 820, 841 (11th Cir. 1999).

In United States v. Raddatz, 447 U.S. 667 (1980), the Supreme Court held that a district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings. See id. at 675-76. The Court then stated, "we assume it is unlikely that a district court would reject a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach." Id. at 681 n.7 (emphasis in original). Addressing this unreached question, this Court has held that generally a district court must rehear the disputed testimony before rejecting a magistrate judge's credibility determinations. Louis v. Blackburn, 630 F.2d 1105, 1109 (5th Cir. 1980)[2]; see also Cullen v. United States, 194 F.3d 401, 406 (2d Cir. 1999); Hill v. Beyer, 62 F.3d 474, 482 (3d Cir. 1995). In United States v. Marshall, 609 F.2d 152 (5th Cir. 1980), we held that this general rule is subject to a small exception in the "rare case" where "there . . . [is] found in the transcript an articulable basis for rejecting the magistrate's original

[2]In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

resolution of credibility and that basis . . . [is] articulated by the district judge." Id. at 155. This is not the "rare case" discussed in Marshall, as the transcript here provides no basis to reject the magistrate judge's credibility findings. Thus, the district court erred when it substituted its credibility determinations for those of the magistrate judge without first rehearing the disputed testimony.

2.    The law of abandonment

Because a district court's finding regarding abandonment involves the resolution of factual disputes, we ordinarily review abandonment determinations for clear error. See United States v. Ramos, 12 F.3d 1019, 1022 (11th Cir. 1994). In this case, however, because the district court found that, even accepting the government's evidence as true, the government had not shown, as a matter of law, that Cofield abandoned his luggage, we review the district court's legal determination de novo. See Register, 182 F.3d at 841.

Generally, an individual enjoys a reasonable expectation of privacy in personal luggage. See United States v. McKennon, 814 F.2d 1539, 1544 (11th Cir. 1987) (citing United States v. Place, 462 U.S. 696, 707 (1983)). However, an individual who abandons or denies ownership of personal property may not contest the constitutionality of its subsequent acquisition by the police. See Ramos, 12 F.3d at 1023; United States v. Hawkins, 681 F.2d 1343, 1345 (11th Cir. 1982).

5

In determining whether there has been abandonment, the "'critical inquiry is whether the person prejudiced by the search . . . voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.'" Ramos, 12 F.3d at 1022 (quoting United States v. Winchester, 916 F.2d 601, 603 (11th Cir. 1990)). Whether abandonment has occurred is a question of intent that may be inferred from acts, words and "other objective facts." United States v. Pirolli, 673 F.2d 1200, 1204 (11th Cir. 1982). While the individual whose property was searched bears the burden of proving a legitimate expectation of privacy in the items searched, the burden of proving abandonment is on the government. See Ramos, 12 F.3d at 1023.

According to the government's witnesses, Cofield was holding two bags at the time the officers initially asked if he would consent to a search. Cofield refused consent, stating that a narcotics-detecting dog had already "searched" his bags. The officers then explained the dog sniff procedure and again asked for permission to search his bags. At this point, Cofield removed the bags from his shoulders and put them on the ground, denied that the bags belonged to him, and attempted to walk away from the area. To confirm Cofield's denial of ownership, the officers asked Cofield if the bags belonged to him and Cofield responded, "No,

those are not my bags." The officers then made a loud announcement asking whether the bags belonged to anyone. No one, including Cofield, claimed ownership of the bags. The officers then searched the bags and found 1,411 grams of cocaine base hidden inside one of the bags.

Contrary to the district court's conclusion, if these facts are taken as true, it is clear that Cofield abandoned the bags and the subsequent search was constitutional. Cofield was not in custody when he placed the bags on the ground, nor were there any other conditions that would have led Cofield to believe that he was not free to refuse consent.[3] See, e.g., United States v. Smith, 201 F.3d 1317, 1321-22 (11th Cir. 2000). Moreover, if the government's version of the facts is believed, Cofield's decision to abandon the bags did not result from police

---

[3]In finding that the government's evidence, taken as true, failed to demonstrate abandonment, the district court relied upon the Supreme Court's decision in Smith v. Ohio, 494 U.S. 541 (1990). Smith, however, is inapposite. In Smith, a defendant carrying a brown paper bag was approached by two plainclothes officers. One of the officers, without identifying himself, attempted to stop and question the defendant. The defendant did not respond and continued walking. After the officer identified himself the defendant threw the bag he was carrying onto the hood of his car. The officers questioned the defendant as to the contents of the bag but he did not respond and instead attempted to protect the bag. The officer then pushed the defendant's hand away and opened the bag over the defendant's objections. The drug paraphernalia discovered within led to the defendant's eventual conviction. The Supreme Court reversed the conviction noting that "a citizen who attempts to protect his private property from inspection after throwing it on a car to respond to a police officer's inquiry clearly has not abandoned that property." Id. at 543-44. Here, unlike the defendant in Smith, Cofield denied ownership of his luggage and, rather than attempting to protect the contents of the bag, placed them on the ground and walked away. Thus, we conclude that the district court erred in determining that the government's evidence, if taken as true, failed to demonstrate that Cofield abandoned his bags.

misconduct.  See <u>Pirolli</u>, 673 F.2d at 1204 (stating abandonment is involuntary when precipitated by police misconduct).

For the foregoing reasons, the district court's order granting Cofield's motion to suppress is vacated and remanded for further proceedings consistent herewith.[4]

**VACATED AND REMANDED**

---

[4]In Footnote 1 of its opinion, the district court took judicial notice of a report by a nonprofit organization and suggested that the decision to search Cofield's luggage may have been based on a racial profile.  The parties, however, did not raise the issue of racial profiling in Cofield's arrest, and did not reference this report in the district court.  Also, a thorough review of the record and the transcripts of the hearing before the magistrate judge reveals no specific evidence supporting this inference.   As such, it was an abuse of discretion to rely on the report as it had no relevance to the proceedings.  The district court erred in judicially-noticing the report, and judicially-noticing facts about an issue not raised by the parties or supported by the evidence, and assigning weight to those facts in its credibility determinations.   Because this report had no relevance in this case, we do not reach the final issue of whether this report could even be the proper subject of judicial notice under Fed. R. Evid. 201.