MARTIN, Circuit Judge,
dissenting:
I agree with the careful ruling of the Majority that the search of Man Johnson and Jennifer Sparks’s cell phone by Detective-Sergeant O’Reilly exceeded the scope of the private search done by Linda Vo and David Widner. I write separately, however, because I do not believe that Mr. Johnson and Ms. Sparks abandoned their cell phone. And if the phone was not *1351 abandoned, then the twenty-three-day delay in getting a search warrant for the phone was long enough to render its seizure unreasonable under the Fourth Amendment. Based on this, I would suppress law enforcement’s search of the phone to the extent it went beyond the private search. Also, the officers searched the Johnson/Sparks home based on what they found during what I view as their unreasonable seizure of the phone, so I would suppress that search as well.
Both Mr. Johnson and Ms. Sparks pleaded guilty, but conditioned those pleas on their ability to raise the Fourth Amendment claims the panel addresses here. While my ruling would not suppress all of the evidence used to convict them, I believe it would mean they are prevailing parties, as that term is used in Federal Rule of Criminal Procedure 11. Mr. Johnson and Ms. Sparks would therefore have the right, under Rule 11, to withdraw their guilty pleas. That being the case, I respectfully dissent to the judgment entered by the Majority.
I.
I do not read our precedent to support the Majority’s conclusion that Mr. Johnson and Ms. Sparks abandoned their possesso-ry interest in their cell phone after three days of looking for it.[1] This is not the typical case of abandonment, in which a person’s “only conceivable purpose ... was to rid himself of the [item] with its incriminating contents.” United States v. Williams, 569 F.2d 823, 826 (5th Cir.1978). To my knowledge, this court has not previously deemed property “abandoned” for Fourth Amendment purposes when it was accidentally lost and reasonable efforts were made to find it.
Further, Mr. Johnson and Ms. Sparks’s actions do not suggest that they “abandoned” their phone. It does not seem correct for the Majority to say that Mr. Johnson and Ms. Sparks “took no action to retrieve their phone.” Upon realizing that they had accidentally left their cell phone at Walmart, Ms. Sparks immediately returned to the store in an attempt to find and claim it. The store had not located the cell phone yet, so this first effort proved unsuccessful.
Ms. Sparks then sent a text message identifying herself and Mr. Johnson as the owners of the phone to anyone who might have found it, and urgently requested its return. Linda Yo, a Walmart employee, had found the phone and responded to Ms. Sparks’s text message. Ms. Sparks then spoke with Ms. Vo on the phone. The two arranged for Ms. Vo to keep the phone until Ms. Sparks could pick it up from Ms. Vo’s workplace.
But Ms. Sparks’s second trip to get the phone also proved unsuccessful. Ms. Vo gave the phone to Mr. Widner, who in turn gave it to the Fort Myers Police Department, who then gave it to the Cape Coral *1352 Police Department. Still, Mr. Johnson and Ms. Sparks remained undeterred in their efforts to retrieve their cell phone. Even while Mr. Widner was turning the phone over to the police, Mr. Johnson and Ms. Sparks continued to call and send text messages to the phone in an attempt to reclaim it. These text messages “would automatically pop up” even as the police were examining the phone, stating that “we need the phone back” and even “giving information as to where they could meet to get the phone back.”
At the Fort Myers police station, Detective-Sergeant O’Reilly then turned the phone off and submitted it to evidence, blocking further efforts by Mr. Johnson and Ms. Sparks to successfully communicate with their cell phone. He then drove the phone over to the Cape Coral Police Department. The entire time, Mr. Johnson and Ms. Sparks were under the impression that they were going to get the phone back from Ms. Vo at Walmart and had no knowledge the phone was located at a police station.
The Majority seems to suggest that Mr. Johnson and Ms. Sparks should have done even more to retrieve their phone in order to avoid a finding of abandonment. For example, the Majority characterizes Mr. Johnson and Ms. Sparks as having “voluntarily relinquished” their possessory interest in the phone. This seems to be based on the Majority’s belief that they “took no action to retrieve their phone” from Ms. Vo after their initial attempts in the first three days, “despite knowing who had found it and where she worked.”[2]
But in considering this question, it is important to note that Ms. Vo never testified in this case. We can only surmise based on Mr. Widner’s testimony what Mr. Johnson and Ms. Sparks possibly did to get their phone after it was turned over to the police. And it is simply a mistake to think that we can know the full extent of Mr. Johnson and Ms. Sparks’s efforts to retrieve their cell phone based on Mr. Widner’s testimony. He repeatedly acknowledged he did not know the full extent of Ms. Vo’s interactions with them.[3]
*1353 Courts must distinguish between the everyday use of the term “abandonment” and its use in a context that may result in the loss of Fourth Amendment protections. Here, Mr. Johnson and Ms. Sparks ended their efforts to recover their lost cell phone only after several days of active searching. Although this might colloquially be referred to as “abandonment,” it is not nearly what is necessary to show abandonment so as to deprive someone of their Fourth Amendment protections.
For Fourth Amendment purposes, “the critical inquiry is whether the person prejudiced by the search ... voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.” United States v. Ramos, 12 F.3d 1019, 1022 (11th Cir.1994) (quotation & emphasis omitted). “Whether abandonment occurred is a question of intent which may be inferred from acts, words and other objective facts.” Id. at 1022-23 (quotation omitted). Our precedent teaches us to consider case-specific facts in determining whether abandonment has occurred. Id. at 1025.
There are many ways to affirmatively abandon something. For example, a person may abandon something by words. See, e.g., United States v. Pirolli, 673 F.2d 1200, 1204 (11th Cir.1982) (finding abandonment where ownership of items was explicitly disclaimed by a defendant who said “I never saw them before in my life”). He may abandon it by deed. See, e.g., United States v. Brown, 473 F.2d 952, 954 (5th Cir.1973) (finding abandonment where the defendant had buried a suitcase in a chicken coop in an open field). He may abandon it by a combination of the two. See, e.g., United States v. Colbert, 474 F.2d 174, 177 (5th Cir.1973) (en banc) (finding abandonment where two individuals, in response to police questioning, verbally disclaimed any interest in briefcases and began to walk away from them). He may abandon it by saying nothing under circumstances in which any reasonable owner in the same position would speak up to claim possession. See, e.g., United States v. Cofield, 272 F.3d 1303, 1307 (11th Cir.2001) (per curiam) (finding abandonment of bags where a person set them down and did not claim ownership after the police made a loud announcement asking if the bags belonged to someone nearby). He may abandon it by a failing to act after promising to reclaim the property. See, e.g., United States v. Lehder-Rivas, 955 F.2d 1510, 1521-22 (11th Cir.1992) (finding abandonment where an owner left a suitcase with an acquaintance for over a year after explicitly promising and failing to retrieve it within three months). He may abandon property by giving it away with the intent to accept its return only at his discretion. See, e.g., United States v. McKennon, 814 F.2d 1539, 1546 (11th Cir.1987) (per curiam) (finding abandonment of a suitcase containing cocaine where the defendant gave the luggage to another person to carry and admitted that he did not intend to retake possession unless the carrier reached the final destination without incident).
But a person may not abandon property for Fourth Amendment purposes by mere loss, carelessness, or accident, where he has made reasonable efforts to reclaim the property. See, e.g., Ramos, 12 F.3d at 1026 (11th Cir.1994) (finding no abandonment where the defendant left a briefcase in a temporarily leased condominium a few hours after the scheduled checkout and telephoned the condominium office the next day to seek the briefcase’s return). In light of their repeated efforts to reclaim it, Mr. Johnson and Ms. Sparks demonstrated no intent to abandon the cell *1354 phone.[4] The fact that they could have conceivably done more is simply not sufficient, in my view, to constitute abandonment under the Fourth Amendment.
I also understand the Majority to equate Mr. Johnson and Ms. Sparks’s purchase of a new phone with abandonment of the old. But we must be mindful of the status cell phones now have as property. They function as “cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers.” Riley v. California, - U.S. -, -, 134 S.Ct. 2473, 2489, 189 L.Ed.2d 430 (2014). They have “immense storage capacity” and allow people to “colleet[] in one place many distinct types of information — an address, a note, a prescription, a bank statement, a video.” Id. When Mr. Johnson and Ms. Sparks lost their cell phone, they lost troves of information necessary for navigating modern life. Buying a replacement phone allowed them to begin reaccumulating this information. But getting a new phone does not mean they abandoned their interest in the unique information contained in the lost phone.
In my view, Mr. Johnson and Ms. Sparks took all the reasonable steps a responsible owner of lost property would have taken to recover it. That being the case, they did not “abandon” their lost cell phone after three days. I would hold that Mr. Johnson and Ms. Sparks maintained a possessory interest in the phone during the entire twenty-three-day seizure.
II.
If indeed Mr. Johnson and Ms. Sparks did not abandon their cell phone, we are left to decide whether the twenty-three-day delay in seeking a search warrant for the phone rendered the seizure of the phone — and the resulting search of their home — unreasonable under the Fourth Amendment. No one disputes that police seized the cell phone without a warrant on June 4 and held it until June 27. On that date, Agent Enterline got a search warrant.
*1355 The reasonableness of a delay in getting a search warrant is “determined in light of all the facts and circumstances, and on a case-by-case basis,” balancing the interests of the government and the private citizens. United States v. Mitchell, 565 F.3d 1347, 1351 (11th Cir.2009) (per curiam) (quotations omitted). The reasonableness of the delay is decided upon review of several factors, including: the significance of the interference with the person’s possessory interest; the length of the delay; whether the person consented to the seizure; and the government’s legitimate interest in holding the property as evidence. United States v. Laist, 702 F.3d 608, 613-14 (11th Cir.2012).
In United States v. Mitchell, 565 F.3d 1347 (11th Cir.2009) (per curiam), this Court held that an interference with an individual’s possessory interest in his computer was especially significant because computers are “relied upon heavily for personal and business use” and may “store personal letters, e-mails, financial information, passwords, family photos, and countless other items of a personal nature.” Id. at 1351. This principle, of course, applies to modern cell phones. See Riley, 134 S.Ct. at 2489 (“The term ‘cell phone’ is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone.”). I know of no basis for disputing that people like Mr. Johnson and Ms. Sparks have a strong possessory interest in their cell phones.
In United States v. Laist, 702 F.3d 608 (11th Cir.2012), this court held that two factors might diminish a person’s significant possessory interest: (1) the possessor is given the opportunity to (and actually does) remove anything he wants from the item before it is confiscated; or (2) the possessor admits to the presence of and actually shows the contraband on the device to government officials. Id. at 616. Neither of these diminishing factors is present here. Mr. Johnson and Ms. Sparks lost their phone, and were never given any opportunity to remove any information from it before it was seized. Nor did they make any admission to the Cape Coral Police Department that the phone contained contraband. The officers who possessed the phone had not actually seen the contraband. During the period of delay in getting the search warrant, Mr. Johnson and Ms. Sparks continued to have a strong possessory interest in their cell phone that we must weigh heavily in deciding whether the delay was reasonable.
The length of the delay — twenty-three days — also weighs against finding it was reasonable. In Mitchell, we concluded that a similar twenty-one-day delay was unreasonable. Mitchell, 565 F.3d at 1353. In Laist, although we found a twenty-five-day delay reasonable based on facts not present here, we cautioned that such a long delay was “far from ideal.” Laist, 702 F.3d at 617. We deemed the delay in Laist justifiable because the government officials began preparing the warrant “on the very day” they received notice that a search warrant was necessary. Id. at 618. Also noteworthy," the warrant in Laist contained “extensive quantities of non-boilerplate information” that had been “drafted originally for th[at] warrant application.” Id.
I see no similar justification for the delay here. Agent Enterline certainly did not start working on the warrant on the day she got the cell phone. Neither did she begin preparing it while she was back in town from June 8-10, or when she was again in town from June 16-20. Also, the warrant she produced contained little original information. A mere half-page was anything other than boilerplate, and the warrant took less than half a day to pre *1356 pare. Finally, Agent Enterline’s justification for the delay — that she had been out of town to take part in three separate trainings and had been told the search warrant was “no big deal, look into it when you get back” — was precisely the type of justification for delay this court rejected in Mitchell. See Mitchell, 565 F.3d at 1352-53.
While a person’s consent to the seizure of his property may justify some delay in procuring a search warrant, Laist, 702 F.3d at 614, there was clearly no consent here. Mr. Johnson and Ms. Sparks did not even know the police had their phone, and the police made no effort to secure their consent to the seizure.
Finally we must consider “the government’s legitimate interest in holding the property as evidence.” Laist, 702 F.3d at 614. We know that Agent Enterline had not seen images of child pornography on the cell phone. That makes this case different from Laist. See id. at 616. This case is also not like Mitchell because the defendants had not told Agent Enterline there was contraband on the phone. See Mitchell, 565 F.3d at 1349 (finding even an admission by the defendant insufficient to bolster the government’s interest because “until an agent examines the [item’s] contents, he cannot be certain that it actually contains child pornography,” id. at 1351). Agent Enterline had been told only that the phone “may or may not contain child pornography.” This remark, in my view, is not enough to create a government interest in keeping custody of the phone sufficient to justify the twenty-three-day delay in seeking a search warrant.
I would hold that the government’s twenty-three-day delay rendered the seizure of the cell phone, and the resulting search of Mr. Johnson and Ms. Sparks’s home, unreasonable under the Fourth Amendment.
III.
As I said at the outset, Mr. Johnson and Ms. Sparks entered a guilty plea in this case, conditioned on their reservation of their right to appeal the Fourth Amendment issues discussed extensively here. Under Federal Rule of Criminal Procedure 11, a defendant who “prevails on appeal” may withdraw a conditional plea. Fed.R.Crim.P. 11(a)(2). The holding I propose would, as I understand it, make Mr. Johnson and Ms. Sparks prevailing parties. This would in turn allow them to withdraw their guilty pleas.
I respectfully dissent to the judgment of the Majority.

. Our precedent requires the government to bear the burden of proving abandonment. United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir.2001) (per curiam). Though the government mentioned the issue of abandonment in the early stages of this case in the District Court, it never asked for or got a ruling from the trial court about whether Mr. Johnson and Ms. Sparks had abandoned their cell phone. The government in essence abandoned its abandonment argument. The District Court made no findings related to abandonment in denying the defendants’ motions to suppress. It did not mention the word. The government, in turn, did not argue abandonment on appeal. Indeed, the word "abandon” never appears in the brief the government filed here. Because the government failed to meet its burden of proof on the abandonment issue, and we have no factual findings about abandonment from the District Court, we should not now rely on our own findings on that subject to rule in favor of the government on appeal.

. In order to arrive at its finding that Mr. Johnson and Ms. Sparks abandoned their phone, the Majority makes findings, for the first time on appeal, about what Mr. Johnson and Ms. Sparks knew and what motivated them to take the actions they may or may not have taken. For example, the Majority says that Mr. Johnson and Ms. Sparks "chose not to file a report with the police complaining about Vo's failure to give them back their phone, though they knew where Vo could be found,” that they "did not ask anyone at Wal-mart for assistance in obtaining the phone's return from Vo,” and that "no evidence exists that [Mr.] Johnson or [Ms.] Sparks ever even sent another text message to the phone after June 4, 2012, in an attempt to retrieve it.” The District Court made no factual findings one way or the other about these issues. It is the job of Courts of Appeals to review findings of fact for clear error. See United States v. Ramos, 12 F.3d 1019, 1022 (11th Cir.1994); Fed.R.Civ.P. 52(a)(6). We do not properly engage in fact finding in the first instance. See S.S. Silberblatt, Inc. v. U.S. for Use & Benefit of Lambert Corp., 353 F.2d 545, 550 (5th Cir.1965) ("It is not the province of this court to determine the essential facts on which the judgment is based; that is the proper function of the trial court.”).

. For example, the following exchanges were had during Mr. Widner's testimony: Q: "And you don't know how many [photos] that your wife looked at?” A: "No, I do not.” Q: “You don't know one way or the other whether [Ms. Vo sent a text to the phone]?” A: "Correct.” Q: "So you don't know whether your wife gave [the Fort Myers Police Department] the details of the communication that she had had with the individual that called with respect to the phone?” A. "No.” Q: "And have you spoken to your wife further about what the nature of that conversation was?” A. "No, sir, not really.”

. To my knowledge, no other Circuit has ever found abandonment for Fourth Amendment purposes where property was lost and the owner made reasonable efforts to recover it. The Seventh Circuit explained abandonment precedent from federal Courts of Appeals nicely:
There are three general types of abandonment cases, which are based on the[] two [main] indicia of abandonment!, explicit denials of ownership and physical relinquishment of the property]. The first type is characterized by the presence of a fleeing defendant who relinquishes an object to make his flight easier or because discarding the item might make it easier for him to later claim that he never possessed it.... The second type of case is closely related to the first, for in so-called "garbage cases” the defendant places material in or near a refuse receptacle that is readily accessible to the public, and in which he usually places other discarded materials.... In the third type of case, the defendant is usually caught red-handed with or near a container of contraband, whereupon he denies that the container or its contents are his.
United States v. Basinski, 226 F.3d 829, 837 (7th Cir.2000) (citations omitted). This case does not look like any of these situations, where a finding of abandonment might be appropriate.
Other Circuits have found in cases like this one, where there was no verbal denial of an interest in the property or clear physical relinquishment of it (such as by throwing the property away, unconditionally giving it to another person, or dropping it and running away from it), that a person had not abandoned the property. See, e.g., United States v. Infante-Ruiz, 13 F.3d 498, 501-02 (1st Cir.1994); United States v. Scrivner, 680 F.2d 1099, 1100-01 (5th Cir.1982); United States v. Basinski, 226 F.3d 829, 837-38 (7th Cir.2000); United States v. James, 353 F.3d 606, 616 (8th Cir.2003); United States v. Lopez-Cruz, 730 F.3d 803, 808-09 (9th Cir.2013); United States v. Garzon, 119 F.3d 1446, 1450 (10th Cir.1997); United States v. Most, 876 F.2d 191, 196-97 (D.C.Cir.1989).