[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14692
Non-Argument Calendar
_____

D.C. Docket No. 4:13-cr-10022-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RYAN WITTEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 13, 2016)

Before WILSON, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

After entering a conditional guilty plea, Ryan Witten appeals his conviction for possession of child pornography, in violation of 18 U.S.C. § 2252(a)(5)(B). Specifically, Witten argues on appeal that the district court erred in denying his motions to suppress the evidence found as a result of the August 31, 2012 search of his backpack and the September 1, 2012 search of his car and duffel bag. He contends that on August 31, police lacked probable cause to arrest him and search his belongings and that he did not abandon his backpack prior to his arrest. He further asserts that on September 1, the police did not conduct a valid inventory search of his vehicle and that he did not consent to the search. Upon review of the record and consideration of the parties' briefs, we affirm.

## I. BACKGROUND

We construe the following facts in the light most favorable to the prevailing party in the district court, here, the government. *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000).

From August 22 to August 31, 2012 a suspected trespasser and "peeping tom" plagued the Old Town area of Key West, Florida. The police received at least five complaints about the suspect hiding on the rooftops of houses, peering through windows, and entering enclosed yards. These complainants gave their names and contact information to the police in order to cooperate with the investigation. The witnesses described the suspect as a young white male with

2

closely cropped hair, standing approximately five feet eight inches tall, wearing a backpack. Each of the incidents took place within a few blocks of each other between 11:00 p.m. and 4:00 a.m.

Based on these complaints, a number of Key West Police Department officers patrolled the area on foot. Just after midnight on August 31, four officers on patrol noticed a man matching the suspect's description and carrying a backpack. Police later identified the man as Witten. No one else was in the vicinity at that time. Witten walked out of Courtney's Place, a collection of guest cottages, which the previous night police had investigated as the scene of one of the "peeping tom" incidents. Witten began to walk in the officers' direction but then abruptly reversed direction upon noticing them. Witten turned a corner and quickened his pace.

The officers lost sight of Witten. Sergeant Francisco Zamora instructed the officers to set up a perimeter around the area to look for him. Zamora arrived to the area where Witten was last seen and began looking around with a flashlight. He found Witten hiding in a bush with thick vegetation in the yard of Courtney's Place, just behind a picket fence. Several officers drew their weapons, asked Witten to emerge from the bush, and handcuffed him.

Witten did not appear to have his backpack with him when the officers discovered him. When the officers asked him where his backpack was, Witten

3

replied along the lines of his backpack was at *his* house or at *the* house, presumably the house he was standing in front of.  In its order denying a motion to suppress, the magistrate judge found that, no matter the exact phrasing, Witten's statements were meant to mislead the police and leave the impression that the backpack was located elsewhere.

Shortly thereafter, one of the officers on patrol found a backpack underneath the porch of a house behind and to the side of Witten, next door to Courtney's Place and approximately 12 to 15 feet from where Witten was hiding.  After officers began searching inside the backpack, Witten told officers to stop looking through his backpack; this was the first time Witten claimed ownership over the backpack.  Inside the backpack officers found a condom, lubricant, "sticky" napkins, and two digital cameras.  2d Suppression Hr'g. Tr., Doc. 127 at 85.[1]  One officer quickly looked through one of the cameras and found images of people in stages of undress inside their homes.

The officers arrested Witten for loitering and prowling, in violation of Fla. Stat. § 856.021(1).  The next day, after obtaining a search warrant for the cameras, officers found more pictures of people in their homes.  Witten later admitted to watching people in their homes and taking pictures of them without their knowledge.  The police located several individuals appearing in the pictures, who

---

[1] "Doc." refers to the docket entry in the district court record in this case.

4

confirmed that they had not given permission to be photographed. Key West Police Sergeant Detective Pablo Rodriguez testified that, at that point, the authorities felt confident that they had probable cause to arrest Witten for video voyeurism, a felony under Florida law.

On September 1, the Coast Guard Investigative Service called Rodriguez to inform him that Witten would be released from jail and taken to the Coast Guard base where he was stationed as a service member. Rodriguez also received information from another source that Witten wanted to remove items from his house before the police searched it. Rodriguez attempted to obtain a search warrant for Witten's residence, but was unable to.

Later that day, Rodriguez learned that Witten was allowed to leave the Coast Guard base without supervision. While Rodriguez was at the house of another officer to obtain a cord for one of Witten's cameras, the fellow officer noticed that Witten was in his car in the driveway of his nearby house. Rodriguez watched Witten leave the house with a duffel bag, place the duffel in the trunk of his car, and drive away. The duffel bag appeared to contain objects with sharp edges, possibly a computer. In an unmarked car and with backup on the way, Rodriguez followed Witten with the aim of arresting him.

Witten made a turn the wrong way down a one-way street, his car blocking the intersection. Rodriguez initiated a traffic stop, at which point he arrested

5

Witten and administered *Miranda* warnings.[2]  While back-up officers took Witten

to the police station for booking, Rodriguez looked inside the trunk of Witten's car.

Rodriguez testified that he wanted to be sure what was in Witten's vehicle before it

was impounded to avoid an accusation of planting evidence and to see how

"lucky" he had gotten.  1st Suppression Hr'g. Tr., Doc. 78 at 60.  He found the

duffel bag with sharp objects in it as well as several locked containers.  Because

Witten was under arrest and had no one to take possession of his car, a police

officer drove Witten's car to the station for impounding.

When Rodriguez joined the back-up officers and Witten at the police station,

an officer informed him that Witten wished to speak with him.  Rodriguez

accompanied Witten from a holding room to an interview room.  In the hallway

outside the interview room, Witten told Rodriguez that he was in a lot of trouble

and needed Rodriguez's mercy.  Rodriguez explained that he couldn't promise

Witten anything, but that Witten could help the investigation by allowing

Rodriguez to examine Witten's belongings.  Witten asked, "What things?"  Factual

Proffer, Doc. 99 at 2.  Rodriguez specified the duffel bag and any other items

found in Witten's car, to which Witten replied, "Okay."  *Id.*  At no point did

Rodriguez request that Witten sign a form confirming his oral consent to the

search.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Inside the interview room, Rodriguez gave Witten *Miranda* warnings again. Rodriguez asked Witten if he had gotten consent from the people he had photographed and recorded. Witten explained that some of the people had known about the recordings. He then told Rodriguez that he did not want to talk anymore, at which point the interview concluded.

A few minutes later, Rodriguez asked Witten for the location of the key to the duffel bag found in the car. Witten handed him the key without explanation. Inside the duffel bag, officers found a computer, an external hard drive, and two additional bags containing a variety of digital media. The police contacted the FBI, which took custody of the duffel bag and its contents. After the FBI obtained a federal search warrant, agents discovered 300 images of child pornography on the devices in the duffel bag, including some found on an external hard drive manufactured outside of Florida.

A federal grand jury returned an indictment against Witten, charging him with possessing a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). Witten filed a motion to suppress the evidence derived from the search of his car and duffel bag. After an evidentiary hearing, the magistrate judge issued a report and recommendation ("First R&R"), which recommended that the district court deny the motion to suppress. Witten submitted written objections to the First R&R, to which the

government responded.  The district court adopted the First R&R and denied the motion to suppress.

The grand jury returned a superseding indictment charging Witten with three counts of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  Witten then filed a second motion to suppress, this time arguing that he was unlawfully arrested by the police during his first arrest on August 31, 2012.  Witten sought to suppress all of the evidence the police gathered as a result of that arrest, including the two cameras, photographs, a computer, digital media, and any statements made following his arrest.

After a second evidentiary hearing and supplemental briefs, a magistrate judge issued a report and recommendation ("Second R&R") recommending that the district court deny this motion to suppress as well.  Following objections by Witten and a response by the government, the district court adopted the Second R&R and denied the second motion to suppress.

Witten entered a conditional guilty plea pursuant to a plea agreement. Specifically, Witten pled guilty to Count One of the superseding indictment, subject to his right to appeal the denial of the two motions to suppress.  The plea agreement provided that Witten accepted the credibility determinations of the magistrate judge and the district court.  Additionally, the plea agreement required Witten to acknowledge that the facts in the Stipulated Factual Proffer were true and

that the record satisfied the statutory requirements to establish each of the elements of the offense of child pornography.

The district court sentenced Witten to 108 months' imprisonment, 10 years' supervised release, and a special assessment of $100. Witten now appeals the denial of both motions to suppress.

## II. STANDARD OF REVIEW

We review a district court's denial of a motion to suppress under a mixed standard, reviewing the district court's findings of fact for clear error and its application of the law to those facts *de novo*. *Bervaldi*, 226 F.3d at 1262. When considering a ruling on a suppression motion, we construe all facts in the light most favorable to the prevailing party in the district court, here, the government. *Id.* A determination that property was abandoned is a factual issue that we review for clear error. *United States v. Ramos*, 12 F.3d 1019, 1022 (11th Cir. 1994). We also review for clear error the district court's factual findings as to whether a person gave voluntary consent to a search. *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989).

## III. DISCUSSION

Witten argues that the district court erred in denying his motions to suppress the evidence obtained as a result of the August 31, 2012 search of his backpack

and the September 1, 2012 search of his car and duffel bag.  We conclude that the district court properly denied both motions to dismiss.

### A. August 31, 2012 Search

Witten argues that the district court should have granted his motion to suppress the search of his backpack on August 31 because the police lacked probable cause to arrest him for loitering and prowling, or, in the alternative, he did not abandon his backpack.  We conclude that district court properly denied the motion to suppress because Witten abandoned his backpack.

No seizure of property exists under the Fourth Amendment when a person abandons property.  *Hester v. United States*, 265 U.S. 57, 58 (1924).  To determine whether an individual has abandoned property, we ask whether the individual "voluntarily discarded, left behind, or otherwise *relinquished his interest in the property* in question so that he could no longer retain a reasonable expectation of privacy with regard to it *at the time of the search*."  *Ramos*, 12 F.3d at 1022 (internal quotation marks omitted).  Abandonment "is a question of intent which may be inferred from acts, words and other objective facts."  *Id*. at 1022-23 (internal quotation marks omitted).

When an individual relinquishes possession and disclaims ownership of a piece of property such as an article of luggage, she loses any expectation of privacy in that property.  *See United States v. McKennon*, 814 F.2d 1539, 1546 (11th Cir.

1987).  For example, we have held that a defendant abandoned bags he was carrying when he placed them on the ground, denied that they were his, and walked away from them in response to police officers' request to search.  *United States v. Cofield*, 272 F.3d 1303, 1306-07 (11th Cir. 2001).

We cannot say that the district court committed clear error in finding that Witten abandoned his backpack and therefore denying the motion to suppress. Witten fled from the officers and hid his backpack under the porch of another person's house.  When the officers asked where his backpack was, Witten replied that it was at the house or his house.  In either case, Witten attempted to deceive the officers by implying that his backpack was located elsewhere.  Instead, the backpack lay 12 to 15 feet away, tucked underneath the house behind him.  Witten need not have expressly disclaimed ownership of the bag because he effectively did so both by placing it away from his person and by stating it was at home.  *See id.*

To the extent that Witten contends the search of the backpack was unconstitutional because either his abandonment was involuntary or the search was the fruit of the poisonous tree after an illegal detention, we find these arguments unpersuasive.  Witten hid the backpack before officers detained him.  Several patrol officers had set up a perimeter to locate Witten at the same time he placed the bag under the porch, but such action does not amount to a detention, much less

11

an unconstitutional one that would taint the subsequent search of the backpack.

Because any alleged unconstitutional stop or arrest occurred after Witten

abandoned the backpack, the search cannot be the fruit of the poisonous tree.  *See*

*Fletcher v. Wainwright*, 399 F.2d 62, 64 (5th Cir. 1968) (noting that, to suppress

evidence, there must be a "nexus between the lawless [police] conduct and the

discovery of the challenged evidence").[3]  Additionally, the officers' search for

Witten did not force him to discard his bag involuntarily.  *See United States v.*

*Colbert*, 474 F.2d 174, 176 (5th Cir. 1973) (en banc) ("Police pursuit or the

existence of a police investigation does not of itself render abandonment

involuntary.")  The district court properly denied the motion to suppress the

evidence found in the backpack.

### B. September 1, 2012 Search

Witten also argues that the district court erred in denying his motion to

suppress the fruits of his September 1 arrest.  He claims that the court should have

suppressed the evidence because the officers conducted an invalid inventory search

of his car and because he declined to consent to the search of his duffel bag.  We

find neither argument persuasive and affirm the denial of the motion to suppress.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before the close of business on September 30, 1981.

To satisfy the so-called inventory search exception to the warrant requirement, the government bears the burden to demonstrate that the officers possessed the authority to impound the vehicle and followed departmental policy in conducting the search. *United States v. Williams*, 936 F.2d 1243, 1248 (11th Cir. 1991). "[A] law enforcement officer may impound the vehicle, so long as the decision to impound is made on the basis of standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992) (internal quotation marks omitted). If the vehicle has been impounded lawfully, an officer may conduct an inventory search, including a search of closed containers, "provided the search is conducted pursuant to standardized criteria." *Id.* Although inventory searches cannot serve as pretext, "the mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search." *United States v. Bosby*, 675 F.2d 1174, 1179 (11th Cir. 1982).

We conclude that the September 1 search of Witten's car and the contents therein was a valid inventory search. The magistrate judge found, and the district court accepted, that Rodriguez did not arrest Witten after he left his home as a pretext to search the car. This finding is not clear error, as the magistrate judge found Rodriguez's testimony credible, and Witten accepts these findings of credibility per his plea agreement.

13

Additionally, the magistrate judge committed no clear error in finding that Rodriguez followed Key West Police Department procedures for impounding a vehicle and conducting an inventory search.[4]  Witten's car was blocking an intersection; it would have been impractical for Rodriguez conduct the inventory search at the scene per the preferred Key West Police Department policy of searching at the scene.  Instead, Rodriguez quickly searched the car to avoid an accusation of planting evidence and had the car driven to the station.  Because Witten was under arrest and had no one to take possession of his car, law enforcement needed to transport Witten's car to be impounded.  And Key West Police Department inventory search procedures explicitly allowed Rodriguez to search closed containers within Witten's car and obtain a key to unlock the duffel bag.  We conclude that the district made no clear error in determining that law enforcement properly followed procedures.  *See United States v. Tampas*, 493 F.3d 1291, 1298 (11th Cir. 2007) (concluding that the trier of fact "is free to choose among alternative reasonable interpretations of the evidence").  Moreover, the search is no less valid simply because Rodriguez may have expected to find incriminating evidence in Witten's car.  *See Bosby*, 675 F.2d at 1179.  Law

---

[4] For the first time on appeal, Witten claims that the inventory search was invalid because a police officer drove his car to the station rather than having it towed according to Key West Police Department policy.  We need not consider this argument because Witten failed to raise it either in his motion to suppress or in his objections to the Second R&R.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (Noting that issues "not raised in the district court and raised for the first time in an appeal will not be considered by this court." (internal quotation marks omitted)).

14

enforcement collected the evidence in the car, including the contents of the duffel bag, pursuant to a lawful inventory search.

Even if the inventory search were invalid, we conclude that the search of the duffel bag was constitutional because it was a search "conducted pursuant to a valid consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). For a consensual search to be constitutional, an individual's consent must be voluntary. *United States v. Acosta*, 363 F.3d 1141, 1151 (11th Cir. 2004). We determine by the totality of the circumstances whether a person gave voluntary consent. *Blake*, 888 F.2d at 798. Relevant factors bearing on voluntariness include, but are not exclusive to, the presence of coercion, the defendant's awareness of the right to refuse to consent, and the level of the defendant's cooperation with the police. *Id.*

Based on the totality of the circumstances, we see no clear error in the district court's finding that Witten consented to the search of his duffel bag. Pursuant to Witten's plea agreement's Stipulated Factual Proffer, Witten admitted that he spoke to the police and responded "okay" when asked if they could search his car and duffel bag. Factual Proffer, Doc. 99 at 2. He also admitted that he provided the key to the duffel bag upon being asked where the key was. These admissions are consistent with Rodriguez's testimony at the suppression hearing about these same events.

That Witten was in police custody at the time he consented to the search does not render the consent involuntary. We have held a defendant's consent voluntary even where such consent was given after officers had already arrested and handcuffed the defendant. *See United States v. Garcia*, 890 F.2d 355, 362 (11th Cir. 1989). In *Garcia* we concluded that, although the defendant was "under some pressure to comply" with law enforcement's request to search his property, given the totality of the circumstances, his consent was voluntary because the police did not employ any coercive methods to obtain the defendant's consent beyond the degree of coercion already inherent in any arrest. *Id.* Similarly, the police used no coercive tactics against Witten to force him to comply with a request to search. In fact, Witten himself initiated the conversation with police that led to the request to search. The district court did not clearly err in finding that Witten's consent to search was voluntarily given, and thus the search of his car and duffel bag was valid. The motion to suppress properly was denied.

**AFFIRMED.**