[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13272

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

GERALD THERONE LAWSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:18-cr-00052-WLS-TQL-1

_____

Before ROSENBAUM, JILL PRYOR, and HULL, Circuit Judges.

PER CURIAM:

Defendant Gerald Lawson appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Lawson argues that the district court erred in denying his motion to suppress because the officers did not have reasonable suspicion to detain him, and it was not immediately apparent that he was engaged in any criminal activity. He also argues that he has standing to challenge any Fourth Amendment violations because he did not abandon the Nissan that the officers searched and the key to that vehicle. After review, we affirm.

## I.    FACTS

Defendant Lawson filed a motion to suppress "any and all evidence obtained as a result of his illegal detention, the illegal seizure of his keys, and the illegal search of his car." The district court held a hearing on the motion to suppress. We recount the facts primarily from the testimony presented at the motion-to-suppress hearing and the police bodycam videos.

## A.    Evidence from Suppression Hearing

On July 18, 2018, Lawson's girlfriend, Kesha Fountain, rented a gray Nissan. Fountain gave Lawson the key to the Nissan and permission to drive the Nissan. Lawson drove the Nissan to

Wisenbaker Lane.[1]  Property owner Illinois Freelove gave Lawson permission to park the Nissan in his driveway, which Lawson did. Then, Lawson walked to a nearby vacant lot.  At the lot, Lawson sat and played cards with three of his friends—Vinnie Pierce, Emory Carter, and Richard Crawford.  Lawson placed his cellphone and the key to the Nissan on the table approximately six or seven inches away from him.

Meanwhile, officers from the Lowndes County Sheriff's Office were patrolling the area because there had been a shooting on Wisenbaker Lane.  One of the officers, Rob Picciotti, knew the area around Wisenbaker Lane was prone to violent crime, distribution of narcotics, and gang activity.  When Officer Picciotti approached the vacant lot, he noticed several men, which he thought was unusual given that it was about 9:00 or 10:00 a.m.

Officer Picciotti recognized three of the four men present, whom he identified as Carter, Pierce, and Lawson.  Officer Picciotti previously had arrested Carter for distribution of narcotics, probation violations, and related crimes.  Officer Picciotti was aware of Pierce's involvement in some gang-related activities and some crimes that Officer Picciotti had investigated.  And Officer Picciotti was aware that Lawson had a criminal history and was on probation for a felony sentence.

---

[1] The record refers to this location as both Wisenbaker Lane and Wirebaker Lane.  For the sake of consistency, we refer to this address as Wisenbaker Lane.

When the officers first approached the vacant lot, Officer Picciotti spotted (1) a cellophane wrapper that he believed contained drugs and was later determined to have crack cocaine; (2) a clear bag with narcotic residue near Pierce; and (3) the men playing cards, which Officer Picciotti took to mean gambling was occurring, in violation of Georgia law and Lawson's probation. At that point, Officer Picciotti believed he had a "dope investigation."

When Officer Picciotti inquired about the key on the table, Lawson denied any association with it. Lawson first ignored Officer Picciotti's questioning about the key. When Officer Picciotti asked a second time about the key, Lawson said he was "not aware" who owned the key and looked at a nearby woman named Darlene Clark. Clark then responded that the key belonged to Mika.

Officer Picciotti picked up the key, and no one objected. Officer Picciotti activated the key to see if he could locate the car. A gray Nissan on a neighboring property alerted in response. Officer Picciotti put the key back on the table.

Officer Picciotti asked the men who owned "all th[e] stuff" on the table. The video shows Officer Picciotti point to a black plastic bag, a cellphone, the key, and some bug spray. Lawson claimed ownership of the cellphone but denied ownership of the rest of the items.

Officer Picciotti asked Lawson if he had anything illegal on him. Lawson said, "No sir." Officer Picciotti replied, "I'd like to

check you real quick." Lawson consented to a search of his person, and an officer searched him.

Officer Picciotti asked Lawson if it was okay to look in Lawson's black plastic bag on the table. Lawson denied ownership of the bag. The bag contained beer and cigarettes.

Officer Picciotti asked to search Lawson's cellphone. Lawson unlocked his cellphone and handed it to Officer Picciotti.

Officer Picciotti picked up the key again and decided to hold onto it. Officer Picciotti asked Lawson to sit down in one of the nearby chairs.

Officer Picciotti was suspicious of the fact that the two people closest to the key, Lawson and Pierce, both said they arrived on foot from different locations. He believed that the key could be linked to them and to a criminal act.

At that point, however, Officer Picciotti decided that, based on the proximity of the key and cocaine to Pierce and the denial of the men as to whom the key belonged, Lawson was not involved in criminal activity, so he told Lawson he was "free to go."

Lawson left the scene without the Nissan or the key. At no point during Officer Picciotti's encounter with Lawson did he claim ownership or possession of the key.

Officer Picciotti walked to Freelove's property, where the Nissan was parked. Officer Picciotti noticed that the driver's seat in the Nissan was tilted further back than what would have been

typical for someone of Pierce's size. He thought the positioning of the seat was more consistent with someone of Lawson's height. Freelove told Officer Picciotti that the Nissan belonged to "G," which Officer Picciotti knew to be Lawson's nickname.

Based on all the circumstances surrounding the events of that morning—the discovery of cocaine at the scene, the location of the key on the table near Pierce and Lawson, and the fact that no one had claimed ownership of the key to the Nissan—he believed that the Nissan likely contained contraband. Officer Picciotti called a narcotics dog to the scene. The K9 gave a positive alert for contraband. The officers conducted a search of the Nissan and found a firearm in the Nissan's glovebox. To be clear, at the time of the K9's presence and the officers' search, Lawson had left the area.

## B.    District Court's Order

After the suppression hearing, the district court issued a written order denying Lawson's motion to suppress. The court reasoned that, while Lawson initially may have maintained an objective expectation of privacy in the Nissan and key, he abandoned that expectation when he voluntarily walked away from the scene after denying ownership of the car and key and failing to assert a connection to either. The court further found that, because Lawson abandoned any expectation of privacy in the car and key, he also lacked standing to challenge the search of the Nissan on Fourth Amendment grounds.

Regarding Lawson's detention, the district court found that officers had reasonable, articulable suspicion to detain Lawson briefly based on the circumstances surrounding the encounter, including the fact that (1) officers arrived at the lot to follow up on a recent shooting; (2) the lot and its surrounding area were known for drug and gang-related activity; (3) Officer Picciotti was aware that some of the men at the lot, including Lawson, had criminal histories and were on probation; and (4) as Officer Picciotti approached the men, he saw a cellophane wrapper with what he suspected to be cocaine and a bag with narcotic residue. The district court also reasoned that its finding that Lawson's detention was based on reasonable suspicion was further supported by the fact that Lawson consented to having his phone searched, his brief detention was not unreasonably extended, he was never forced to remain at the scene, and he never stated that he was unwilling to speak with the officers.

The district court also found that adequate probable cause existed to search and seize the key and evidence within the Nissan pursuant to the automobile exception and the totality of circumstances, including the K9's positive alert.

## C.    Lawson's Guilty Plea and Sentence

Following the court's ruling, Lawson pled guilty. In his plea agreement, Lawson expressly reserved his right to appeal the district court's denial of his motion to suppress the search of the Nissan that led to the discovery of the gun.

The final presentence investigation report provided for an advisory guidelines range of 77 to 96 months based on a total offense level of 22 and a criminal history category of V. The district court reduced the offense level to 20, applying the two-level COVID-19 reduction. Lawson's new advisory guidelines range was 63 to 78 months based on a total offense level of 20 and a criminal history category of V. Ultimately, the district court sentenced Lawson to 72 months' imprisonment followed by 3 years of supervised release.[2]

## II.    STANDARD OF REVIEW

A district court's ruling on a motion to suppress presents a mixed question of law and fact. *United States v. Pierre*, 825 F.3d 1183, 1191 (11th Cir. 2016). We review the district court's factual findings for clear error and its application of the law to the facts *de novo*. *Id.* All facts are construed in the light most favorable to the party that prevailed below. *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000). Abandonment involves factual issues and is thus ordinarily reviewed for clear error. *United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001).

## III.    DISCUSSION

### A.    Detention

Lawson argues that he was unlawfully detained because the officers seized him based on a hunch rather than an objective,

---

[2] Lawson does not appeal his sentence.

reasonable suspicion that he was engaged in criminal activity. The government counters that the totality of the circumstances supports a finding of reasonable suspicion that Lawson was involved in, or was about to be involved in, criminal activity.

The Fourth Amendment prohibits unreasonable seizures. U.S. Const. amend. IV. A seizure under the Fourth Amendment occurs "when the officer, by means of physical force or show of authority, terminates or restrains [a person's] freedom of movement, through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (cleaned up).

In determining whether a search or seizure is reasonable, this Court examines the totality of the circumstances. *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012). "[L]aw enforcement officers may seize a suspect for a brief, investigatory stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop [is] reasonably related in scope to the circumstances which justif[y] the interference in the first place."[3] *Id.* (cleaned up). Reasonable suspicion "must be more than an inchoate and unparticularized suspicion or hunch." *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000) (quotation marks omitted).

---

[3] Consistent with the evidence and both parties' arguments on appeal, we analyze Lawson's initial encounter with police as a brief, investigatory detention.

"While 'reasonable suspicion' is a less demanding standard than probable cause and requires showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "[T]he reasonableness of the stop must be judged on the facts known to the officer at the time of the stop." *United States v. Martin*, 636 F.2d 974, 976 (5th Cir. Unit B 1981). And "[r]easonable suspicion need not involve the observation of illegal conduct." *Lewis*, 674 F.3d at 1303.

The existence of reasonable suspicion depends on probabilities, not hard certainties. *United States v. Cortez*, 449 U.S. 411, 418 (1981). An assessment of all the circumstances must yield a particularized suspicion. *Id.* "[N]o single factor is dispositive in determining whether reasonable suspicion exists in any particular context." *United States v. Lopez-Garcia*, 565 F.3d 1306, 1314 (11th Cir. 2009).

Here, the officers had a reasonable suspicion of criminal activity sufficient to detain Lawson briefly based on the totality of the circumstances: (1) drugs were discovered at the scene; (2) the area where Lawson was stopped is a high crime area; (3) Lawson and the other men had known criminal histories; and (4) Lawson and some of the other men were playing cards, which Officer Picciotti thought suggested gambling. *See United States v. Bishop*, 940 F.3d 1242, 1249 n.4 (11th Cir. 2019) (explaining that knowledge of an individual's criminal history may be considered as a relevant

factor in determining reasonable suspicion); *Lopez-Garcia*, 565 F.3d at 1314 (holding that a defendant's presence in a "high-crime area" can contribute to a finding of reasonable suspicion); *United States v. Gonzalez*, 70 F.3d 1236, 1238 (11th Cir. 1995) ("A person's proximity to a person whom officers have probable cause to believe is committing a crime may be considered as a factor in assessing reasonable suspicion."); *see also United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (reasoning that an individual's proximity to another who was gambling illegally was one of several relevant factors in assessing reasonable suspicion).

B.    **Seizure of the Keys and Search of the Nissan**

1.    **Abandonment**

Even if he was lawfully detained, Lawson argues that he still had a property interest and reasonable expectation of privacy in the Nissan and its key and that there was an insufficient basis to search the Nissan. The government asserts that Lawson abandoned any property interest in the Nissan and key when he disclaimed any knowledge of the key and left the Nissan and key behind at the scene.

"The [Fourth] Amendment's protections extend to any thing or place with respect to which a person has a reasonable expectation of privacy." *United States v. Ross*, 963 F.3d 1056, 1062 (11th Cir. 2020) (en banc) (quotation marks omitted). A Fourth Amendment claim will not lie if a defendant abandons the searched property. *See United States v. Ramos*, 12 F.3d 1019, 1023–24 (11th

Cir. 1994). Indeed, a party does not have Fourth Amendment standing to pursue claims regarding property he has voluntarily abandoned because, as with the property, he abandons any reasonable expectation of privacy. *United States v. Pirolli*, 673 F.2d 1200, 1204 (11th Cir. 1982); *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973) (en banc).

This Court "take[s] an objective, common-sense approach to assessing abandonment, focusing on whether the prior possessor voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question in light of his statements, acts, and other facts." *United States v. Green*, 981 F.3d 945, 956 (11th Cir. 2020) (quotation marks omitted), *cert. denied*, 141 S. Ct. 2690 (2021). Evidence may be deemed abandoned upon an individual's denial of its ownership or relinquishment of possession or control over it. *Cofield*, 272 F.3d at 1306–07; *United States v. McKennon*, 814 F.2d 1539, 1546 (11th Cir. 1987). If an individual abandons or denies ownership of property, he may not contest the constitutionality of its subsequent acquisition by the police. *Cofield*, 272 F.3d at 1306.

Here, the district court did not err in finding Lawson abandoned any expectation of privacy in the Nissan and its key. Lawson abandoned any interest in the Nissan and key when he repeatedly disclaimed ownership of the key and voluntarily walked

away from the Nissan and the key.[4]  *See, e.g.*, *United States v. Hastamorir*, 881 F.2d 1551, 1559–60 (11th Cir. 1989) (holding a defendant who repeatedly denied any knowledge of a car where drugs were discovered abandoned any reasonable expectation of privacy in the car); *United States v. Canady*, 615 F.2d 694, 697 (5th Cir. 1980) (holding the defendant lacked a privacy interest in a suitcase when he repeatedly disclaimed ownership of it).

Lawson argues abandonment of a Fourth Amendment right in property requires an affirmative act demonstrating a person's intent to abandon the property. This argument lacks merit. Neither this Court nor the Supreme Court has ever held that an affirmative act is required to show abandonment in this context. But, even if an affirmative act was required, Lawson's argument still fails because he denied ownership of the key and deliberately walked away from the vacant lot, leaving the Nissan and key behind. Those are affirmative acts.

In sum, Lawson lost standing to raise a Fourth Amendment claim regarding the seizure of the key and the search of the Nissan.

---

[4] To be clear, Lawson initially had a property interest in the Nissan and key when Fountain gave him permission to drive the car. *See Byrd v. United States*, 138 S. Ct. 1518, 1524 (2018) ("[A]s a general rule, someone in otherwise lawful possession and control of a rental car has a reasonable expectation of privacy in it even if the rental agreement does not list him or her as an authorized driver.").

### 2.    Merits

Lastly, Lawson argues that the officers illegally seized the key to the Nissan and then searched the Nissan without probable cause because the K9 was not properly trained or reliable.  Having agreed with the district court that Lawson lost standing to challenge the seizure of the key and the search of the Nissan, we need not address these arguments.

## IV.    CONCLUSION

We affirm the district court's denial of Lawson's motion to suppress and Lawson's conviction for being a felon in possession in violation of 18 U.S.C. § 922(g)(1).

**AFFIRMED.**