**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4266

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

QUENTIN JAVON FEREBEE,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Max O. Cogburn, Jr., District Judge.  (3:17-cr-00218-MOC-DSC-1)

Argued:  January 31, 2019                                      Decided:  April 22, 2020

Before AGEE and FLOYD, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by published opinion.  Senior Judge Traxler wrote the majority opinion, in which Judge Agee joined.  Judge Floyd wrote a dissenting opinion.

**ARGUED:**  Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

TRAXLER, Senior Circuit Judge:

Quentin Javon Ferebee, a convicted felon, entered a conditional guilty plea to unlawful possession of a firearm, *see* 18 U.S.C. § 922(g), and was sentenced to 10 months' imprisonment and two years' supervised release. Ferebee's plea preserved his right to appeal the district court's denial of Ferebee's motion to suppress. We find no reversible error and affirm.[1]

I.

On March 23, 2017, Ferebee was visiting his friend Shana Dunbar at her house in Charlotte, North Carolina. Dunbar was on probation for a state offense, although Ferebee was unaware of that fact. Ferebee was sitting on the sofa in the living room with a marijuana blunt in his hand when law enforcement officials arrived to conduct a warrantless search, as authorized by the terms of Dunbar's probation. A black backpack was on the floor, leaning against the sofa where Ferebee was sitting. Probation Officer Jason Bensavage asked Ferebee to stand up so he could check the sofa for weapons.

---

[1] After oral argument in this case, the Supreme Court issued its opinion in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), holding that the government is obligated to prove that a defendant charged under 18 U.S.C. § 922(g) has knowledge of his relevant status that prohibits him from lawfully possessing a firearm. *See id.* at 2194 ("To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it."). Ferebee filed a supplemental brief raising a *Rehaif* claim, and we placed this case in abeyance pending this circuit's resolution of the questions arising under *Rehaif*. On April 16, 2020, we granted Ferebee's request to withdraw his *Rehaif* claim and remove his case from abeyance.

Ferebee stood up, picked up the backpack with his left hand, and held it out as another officer patted down Ferebee.

When Officer Bensavage asked Ferebee if he had any weapons on him or in the bag, Ferebee "stated that the bag was actually not his." J.A. 48. Officer B.M. Sinnott arrested Ferebee for possession of marijuana and began placing Ferebee in handcuffs. As Ferebee was being handcuffed, Officer Bensavage searched the sofa and found a handgun under the cushions. Detective Thomas Grosse took the backpack from Officer Sinnott, who took Ferebee outside, leaving open the door to the house as they exited. Detective Grosse remained in the house and searched the backpack less than a minute after Officer Sinnott took Ferebee outside. Detective Grosse found Ferebee's identification card inside the backpack, along with a firearm, marijuana, and drug paraphernalia.

Officers transported Ferebee to the police station after learning of his prior felony conviction. At the station, Ferebee told police, among other things, that the backpack and the gun inside it belonged to him.

Ferebee was indicted on a charge of unlawful possession of a firearm by a convicted felon. He pleaded not guilty and sought to suppress the evidence recovered from the backpack and his statements to the police. Ferebee contended that he had a reasonable expectation of privacy in the backpack and that the warrantless search violated his Fourth Amendment rights. At the conclusion of the hearing on the motion to suppress, the district court issued an oral ruling denying the motion, concluding that Ferebee lacked standing to challenge the search after denying ownership of the backpack and, alternatively, that the search was a lawful search incident to arrest. The district court subsequently issued a

3

written order denying the motion. The written order included analysis that was not contained in the oral ruling. Ferebee thereafter pleaded guilty but preserved his right to appeal the denial of his suppression motion. *See* Fed. R. Crim. P. 11(a)(2).

Ferebee challenges both portions of the district court's analysis on appeal. As to the question of standing, Ferebee relies on the "collective knowledge" doctrine to argue that his disavowal of ownership of the backpack does not prevent him from challenging the search because the officer who actually searched the backpack did not hear Ferebee deny ownership. As to the search-incident-to-arrest question, Ferebee argues that the warrantless search was improper because he was outside the house and handcuffed when the backpack was searched.

## II.

## A.

We begin with the "collective knowledge" doctrine. When considering the existence of probable cause for warrantless searches or arrests, questions sometimes arise as to whether probable cause must be established only through the information personally known by the arresting or searching officer, or whether information known by other officers may also be factored into the equation. Although some circuits permit the aggregation of individual bits of independent knowledge, *see United States v. Massenburg*, 654 F.3d 480, 494 (4th Cir. 2011), this circuit limits application of the doctrine to cases where the search or arrest is directed by an officer who himself has sufficient knowledge to amount to probable cause:

4

> [T]he collective-knowledge doctrine simply directs us to substitute the knowledge of the *instructing officer or officers* for the knowledge of the *acting officer*; it does not permit us to aggregate bits and pieces of information from among myriad officers, nor does it apply outside the context of communicated alerts or instructions.

*Id.* at 493; *see United States v. Laughman*, 618 F.2d 1067, 1072-73 (4th Cir. 1980) ("The law seems to be clear that so long as the officer who orders an arrest or search has knowledge of facts establishing probable cause, it is not necessary for the officers actually making the arrest or conducting the search to be personally aware of those facts.").

In this case, Officer Bensavage testified that Ferebee told him the backpack was not his and that Officer Sinnott then handed the backpack to Detective Grosse, who searched the backpack shortly thereafter. Detective Grosse did not hear Ferebee disclaim ownership, and there is no evidence in the record that Officer Bensavage gave any instructions to Grosse. Ferebee thus contends that the collective-knowledge doctrine prevents us from attributing Officer Bensavage's knowledge to Detective Grosse. And because Detective Grosse did not know that Ferebee had disclaimed ownership of the backpack, Ferebee argues that the warrantless search was unreasonable. We disagree. As we will explain, the collective-knowledge doctrine simply has no bearing on the propriety of the search in this case.

## B.

As the Supreme Court has long made clear, "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (internal quotation marks omitted). The "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the

5

Amendment has a legitimate expectation of privacy in the invaded place." *Id.* at 143. "In order to demonstrate a legitimate expectation of privacy, [a defendant] must have a subjective expectation of privacy, and that subjective expectation must be reasonable." *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010) (alteration and internal quotation marks omitted).

The requirement that the defendant have a reasonable expectation of privacy in the property -- often characterized as whether the defendant has "standing" to challenge the search -- is not jurisdictional, but it is nonetheless a threshold inquiry that is preliminary to and distinct from the question of whether a warrant was required: "The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched *before seeking relief for an unconstitutional search . . . .*" *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018) (emphasis added); *id.* at 1526 ("Whether a warrant is required is a *separate question* from the one the Court addresses here, which is whether the person claiming a constitutional violation has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." (emphasis added)(internal quotation marks omitted)); *United States v. Bellina*, 665 F.2d 1335, 1339 (4th Cir. 1981) ("[T]he threshold question in every suppression case is the existence of a reasonable expectation of privacy in the area searched." (internal quotation marks omitted)). Accordingly, if the individual seeking to challenge a search does not have a legitimate expectation of privacy in the property or place being searched, the individual lacks "standing" and the inquiry ends without consideration of the merits of the search claim.

6

"The law is well established that a person who voluntarily abandons property loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from the property." *United States v. Leshuk*, 65 F.3d 1105, 1111 (4th Cir. 1995); *accord United States v. Stevenson*, 396 F.3d 538, 546 (4th Cir. 2005). That rule makes sense, as one who abandons property would have no subjective expectation that the property would remain private, nor would society recognize any such expectation as reasonable. For purposes of challenging a search, this court and most others treat a disavowal of ownership of property as an abandonment of the property. *See United States v. Han*, 74 F.3d 537, 543 (4th Cir. 1996) ("Denial of ownership . . . constitutes abandonment."); *Leshuk*, 65 F.3d at 1107, 1111 (defendant who disavowed ownership of backpack and garbage bag found in field where marijuana was growing lacked a reasonable expectation of privacy and therefore could not challenge the warrantless search); *accord United States v. Zapata*, 18 F.3d 971, 978 (1st Cir. 1994) ("One who abandons ownership forfeits any entitlement to rights of privacy in the abandoned property, and one who disclaims ownership is likely to be found to have abandoned ownership." (citation omitted)); *United States v. Torres*, 949 F.2d 606, 608 (2d Cir. 1991) ("It is well settled that an otherwise legitimate privacy interest may be lost by disclaiming or abandoning property, especially when actions or statements disavow any expectation of privacy."); *United States v. Frazier*, 936 F.2d 262, 265 (6th Cir. 1991); *United States v. Ruiz*, 935 F.2d 982, 984 (8th Cir. 1991). That is likewise a sensible rule, as one who disavows ownership is disassociating himself from the property such that any expectation that the property would remain private would not be reasonable. *See Zapata*, 18 F.3d at 978 ("[D]isclaiming

7

ownership is tantamount to declaring indifference, and thus negates the existence of any privacy concern in a container's contents."); *Torres*, 949 F.2d at 608 ("Neither possession nor ownership of property establishes a legitimate expectation of privacy unless the party vigilantly protects the right to exclude others."); *United States v. Lewis*, 921 F.2d 1294, 1302 (D.C. Cir. 1990) ("A voluntary denial of ownership demonstrates sufficient intent of disassociation to prove abandonment.").

Accordingly, in cases involving ownership disclaimers, the inquiry is whether the defendant's words or actions can reasonably be understood as disclaiming any privacy interests in the property. *See United States v. Small*, 944 F.3d 490, 502 (4th Cir. 2019) ("Intent to abandon may be inferred from words spoken, acts done, and other objective facts." (internal quotation marks and alteration omitted)), *cert. denied*, No. 19-1102, 2020 WL 1668360 (U.S. Apr. 6, 2020); *Stevenson*, 396 F.3d at 546 (explaining that the test for abandonment is whether the defendant "retains a reasonable expectation of privacy" in the property at issue (internal quotation marks omitted)). The inquiry focuses on objective evidence of "the intent of the person who is alleged to have abandoned the place or object." *United States v. Thomas*, 864 F.2d 843, 846 (D.C. Cir. 1989); *accord Bond v. United States*, 77 F.3d 1009, 1013 (7th Cir. 1996) ("In determining whether a person has abandoned property, we can infer from words spoken, acts done, and other objective facts whether he voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question." (internal quotation marks and emphasis omitted)).

While the abandonment inquiry focuses solely on the intent of the defendant, the collective-knowledge doctrine focuses solely on the knowledge of the police officers; the

8

knowledge or intent of the defendant has no relevance to the question of whether the facts known to the police are sufficient to establish probable cause. Given the differing focuses of the inquiries, it is clear to us that the collective-knowledge doctrine for police officers has no bearing on the separate question of abandonment by a defendant.

As noted, abandonment turns on the intent of the defendant as revealed through his words or actions, and it can occur without the contemporaneous knowledge of any other person. For example, a defendant could abandon a backpack by choosing to leave it as he disembarks from a cross-town bus. The abandonment is complete when the defendant deliberately walks away without the bag, even if there was no witness to the act. A defendant could also abandon a backpack by leaving it on a sofa at a party and answering, "it isn't mine," when asked by a fellow party-goer. The abandonment is complete upon the disclaimer of ownership.

In this case, the abandonment was complete when Ferebee told Officer Bensavage that the backpack was not his. At that point, Ferebee disassociated himself from the backpack and lost any legitimate expectation of privacy and the "capacity" to challenge its subsequent treatment. *Rakas*, 439 U.S. at 143 (explaining that the "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place"). Because Ferebee lost his privacy interest in the backpack after disavowing ownership to Bensavage, it is simply irrelevant that Officer Grosse did not hear the statement. Indeed, even if Officer Grosse believed at the time of the search that the backpack belonged to Ferebee, our analysis would not change. The search took place *after*

9

conduct that the district court reasonably found sufficient to establish abandonment. Ferebee lost any expectation of privacy at that moment, and the subsequent search therefore did not violate *Ferebee*'s Fourth Amendment rights. Accordingly, Ferebee lacks the capacity to bring a Fourth Amendment challenge to the search, without regard to Officer Grosse's knowledge or intent. *See Han*, 74 F.3d at 545 ("[W]hether the officers knew that Han owned the bag [in which he disavowed ownership] is irrelevant. The constitutional property right belonged to Han, and his abandonment of that right did not depend on whether the officers knew that it existed.").

We recognize that some out-of-circuit cases refer to the knowledge of the "searching" or "investigating" officer when discussing the standard for abandonment. *See, e.g., United States v. Camberos-Villapuda*, 832 F.3d 948, 952 (8th Cir. 2016) ("Abandonment is determined based on the objective facts available to the *investigating officers* at the time they conducted the challenged search." (emphasis added)); *United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2003) ("To demonstrate abandonment, the government must prove by a preponderance of the evidence that the defendant's voluntary words or actions would lead a reasonable person *in the searching officer's position* to believe that the defendant relinquished his property interests in the item to be searched." (emphasis added)). Those cases, however, did not involve a situation where only some of the officers on the scene were aware of the facts establishing abandonment. Because that issue was not presented, it is not surprising that the description of the evidence necessary to establish abandonment referred to the searching or investigating officers. The courts were not silently importing the collective-knowledge doctrine into an unrelated area of the

10

law, but were instead simply stating the rules governing abandonment in the context of the facts of those cases. *See United States v. Alexander*, 573 F.3d 465, 473 (7th Cir. 2009) ("Alexander had disclaimed that the vehicle was his. That is enough to establish abandonment despite the officers' belief that the [vehicle] was Alexander's."); *United States v. Ruiz*, 935 F.2d 982, 984 (8th Cir. 1991) (disclaimer of ownership of luggage sufficient to support district court's conclusion that luggage was abandoned). Accordingly, we do not believe that the cases referring to the knowledge of the searching officers can be understood as holding that where a defendant abandons property in the presence of the multiple law enforcement officers, a subsequent search is lawful only if it is performed by an officer who personally and contemporaneously witnessed the evidence showing abandonment. Indeed, such a rule would be inconsistent with the well-established rule that a search of abandoned property does not implicate the Fourth Amendment. *See United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997) ("A warrantless search of abandoned property does not implicate the Fourth Amendment, for any expectation of privacy in the item searched is forfeited upon its abandonment."); *Bond v. United States*, 77 F.3d 1009, 1014 (7th Cir. 1996) ("Because Bond abandoned the suitcase before the police searched it, our Fourth Amendment inquiry ends."). We therefore reject Ferebee's claim that the collective-knowledge doctrine has any bearing on the propriety of the district court's conclusion that Ferebee abandoned the backpack.

## C.

Ferebee raises other challenges to the district court's abandonment finding. He contends that his disavowal of ownership is insufficient to show abandonment given that

11

he maintained physical possession of the backpack even after his statement. We disagree. Continued physical possession is certainly a fact that a district court may consider in a proper case, but the court is not precluded from finding abandonment in cases where the defendant has physical possession of the property he has disavowed.

Ferebee also contends the district court erred by concluding in its written order that when he was being patted down, he "extended [the backpack] towards the officers," an action that the district court found "reinforce[d] the disclaimer." J.A. 98; *see also* J.A. 97 (stating that Ferebee "disclaimed ownership of the backpack while extending the backpack in the direction of the approaching officers"). The district court did not include that factual finding when orally denying the suppression motion at the conclusion of the hearing. Ferebee argues that he had the backpack in his hand as he held his arm away from his body to facilitate the pat-down. He contends that no witness testified that Ferebee was offering the backpack to the police and that the district court's finding thus is not supported by the evidence.

While Ferebee is correct that no witness directly testified that Ferebee held the backpack out *towards the officers*, it is equally true that no witness directly testified that Ferebee was holding the backpack out *to facilitate the pat-down* -- both versions depend on inferences drawn from the facts as presented at the suppression hearing. As both versions are plausible and reasonable, our standard of review requires us to defer to the inference drawn by the district court. *See, e.g., United States v. Lewis*, 606 F.3d 193, 197 (4th Cir. 2010) ("In assessing a district court's decision on a motion to suppress, . . . . we must construe the evidence in the light most favorable to the prevailing party, and give due

12

weight to inferences drawn from those facts by resident judges and law enforcement officers." (internal citation and quotation marks omitted)). But even if we were to assume that the inference drawn by the district court was not reasonable, reversal would not be required. Even if Ferebee were simply holding the bag out from his body but not holding it towards the officers, the district court found that Ferebee previously had made a "clear, unequivocal statement" disavowing ownership of the backpack and that he abandoned the backpack at that point. J.A. 82; *see also* J.A. 98 ("[D]efendant's words were an affirmative disavowal of ownership. . . ."). Although "[a]bandonment should not be casually inferred," *Small*, 944 F.3d at 502, our cases have made it clear that a disavowal of ownership is alone enough to support a finding of abandonment. *See Han*, 74 F.3d at 543 ("Denial of ownership . . . constitutes abandonment."); *accord Leshuk*, 65 F.3d at 1111 (affirming district court's finding of abandonment where defendants disclaimed ownership of bags found to contain marijuana). The district court's conclusion can therefore be affirmed without consideration of the challenged inference. *See United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005) (explaining that this court may affirm a district court's ruling on a motion to suppress on any ground apparent from the record).

D.

The dissent contends that the district court's determination that Ferebee abandoned the backpack is a legal conclusion to be reviewed de novo, rather than a factual finding to which we must defer unless clearly erroneous. We disagree.

As our cases have made clear, the ultimate question of whether a given set of facts gives rise to a reasonable expectation of privacy is a legal question. *See Stevenson*, 396

13

F.3d at 545; *United States v. Ramapuram*, 632 F.2d 1149, 1155 (4th Cir. 1980). But it is the district court that tells us what that set of facts is, and the district court's determination of those underlying facts is subject to the deferential clear-error standard of review. That distinction is evident in *Stevenson*, the case upon which the dissent relies. In *Stevenson*, the question was whether the defendant had abandoned his privacy interests in an apartment he had been renting on a week-to-week basis. The district court concluded, based on a letter written by the defendant, that the defendant "had formed an intention not to return to the apartment," 396 F.3d at 540, and that the defendant therefore did not have a reasonable expectation of privacy at the time law enforcement conducted a warrantless search of the apartment. We reviewed the district court's determination that the letter showed the defendant relinquished his interest in the apartment for clear error. *See id.* at 544 ("[T]he district court found as facts that, by the time of the search on January 24, 2003, Stevenson had 'no intention of returning to his apartment' and 'no longer considered himself a resident of the apartment.'. . . Applying the clearly erroneous standard to these findings, we conclude that the district court did not clearly err."). We then went on to consider de novo *whether the facts as found by the district court* were sufficient as a matter of law to show that the defendant had no reasonable expectation of privacy in the apartment at the time of the search. *See id.* at 545 ("Having affirmed the district court's factual finding that Stevenson had no intention to return to the apartment, we still must turn to the question of whether that finding leads to the legal conclusion that any expectation of privacy that Stevenson claimed in the apartment at the time of the search was unreasonable."). In this case, the district court held that Ferebee abandoned his privacy interest in the backpack

14

when he disclaimed ownership of it. That is a finding of fact, just as the relinquishment finding in *Stevenson* was a finding of fact, and we must defer to it unless clearly erroneous.

The dissent also contends the district court's abandonment finding was clearly erroneous, arguing that "the evidence of abandonment does not preponderate," and that while some evidence "weighs in the government's favor," that evidence is "counterbalanced" by other evidence favoring Ferebee. Dissenting Opinion, *infra* at 28. As those statements make clear, the dissent's real complaint is with the weight that the district court gave to the evidence presented at the suppression hearing. The dissent's approach, however, is inconsistent with our limited and deferential role applying clear-error review.

"A court reviewing for clear error may not reverse a lower court's finding of fact simply because it would have decided the case differently. Rather, a reviewing court must ask whether, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed." *United States v. Wooden,* 693 F.3d 440, 451 (4th Cir. 2012) (internal quotation marks and alteration omitted). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74 (1985). The dissent acknowledges that there is evidence (and case law) supporting the district court's conclusion that Ferebee abandoned the backpack by disclaiming ownership, and the dissent describes the issue as "a close call." Dissenting Opinion, *infra* at 28. For a factual finding to be clearly erroneous, however, the finding

15

must be "against the *clear weight* of the evidence considered as a whole." *United States v. Martinez-Melgar*, 591 F.3d 733, 738 (4th Cir. 2010) (internal quotation marks omitted) (emphasis added). In our view, the district court's resolution of a "close" factual question that is based on evidence found credible by the district court cannot be against the "clear weight" of the evidence. We therefore disagree with the dissent's view that the district court clearly erred by finding as a factual matter that Ferebee abandoned his interests in the backpack when he disclaimed ownership of it.

E.

Because the record supports the district court's conclusion that Ferebee clearly and unequivocally disavowed ownership of the backpack, we affirm the district court's conclusion that Ferebee abandoned the backpack and any legitimate expectation of privacy in its contents. The collective-knowledge doctrine has no application to the issue in this case, and the fact that the officer who searched the backpack did not hear the disavowal of ownership does not undermine or otherwise affect the abandonment finding. Even if the searching officer believed that the backpack belonged to Ferebee, he abandoned any legitimate expectation of privacy in the backpack before it was searched, and he therefore lacks the capacity to challenge the subsequent search.[2]

---

[2]     Ferebee also contends the district court erred by concluding in its written order that the suppression of the contents of the backpack was not required under the inevitable discovery rule. In the district court's view, an inventory search of the backpack would have eventually been undertaken and the evidence inevitably discovered. Because the government did not raise this issue below and offered no evidence about the inventory search procedures of the law enforcement agencies involved in this case, the district court erred by relying on the inevitable-discovery doctrine. *See United States v. Bullette*, 854 (Continued)

III.

Even if we were to conclude that the district court erred by finding that Ferebee abandoned the backpack, however, reversal would not be required. As we explain, we agree with the district court that the search of the backpack was a proper search incident to arrest for which no warrant was required under the facts of this case.

"A warrantless search by the police is invalid unless it falls within one of the narrow and well-delineated exceptions" to the Fourth Amendment's warrant requirement. *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999) (per curiam). One of these well-delineated exceptions authorizes warrantless searches incident to arrest. *See United States v. Robinson*, 414 U.S. 218, 224 (1973). "This exception provides that when law enforcement officers have probable cause to make a lawful custodial arrest, they may -- incident to that arrest and without a warrant -- search 'the arrestee's person and the area within his immediate control.'" *United States v. Currence*, 446 F.3d 554, 556 (4th Cir. 2006) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). "Such searches have long been considered valid because of the need 'to remove any weapons that the arrestee might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence." *New York v. Belton*, 453 U.S. 454, 457 (1981) (alteration

_____

F.3d 261, 265 (4th Cir. 2017) ("The inevitable-discovery doctrine . . . allows the government to use information obtained from an otherwise unreasonable search if [the government] *can establish by a preponderance of the evidence* that law enforcement would have ultimately or inevitably discovered the evidence by lawful means." (emphasis added) (internal quotation marks omitted)). Nevertheless, our conclusion that the district court properly found that Ferebee abandoned the backpack makes the district court's error harmless.

17

omitted) (quoting *Chimel*, 395 U.S. at 763). Nonetheless, "[t]he constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979).

Before the Supreme Court issued its opinion in *Arizona v. Gant*, 556 U.S. 332 (2009), courts routinely upheld searches incident to arrest in cases where the defendant was handcuffed at the time of the search. *See, e.g.*, *Currence*, 446 F.3d at 557-58; *United States v. McLaughlin*, 170 F.3d 889, 893 (9th Cir. 1999); *United States v. Abdul-Saboor*, 85 F.3d 664, 668-69 (D.C. Cir. 1996); *United States v. Mitchell*, 64 F.3d 1105, 1110-11 (7th Cir. 1995); *United States v. Helmstetter*, 56 F.3d 21, 23 (5th Cir. 1995); *United States v. Horne*, 4 F.3d 579, 586-87 (8th Cir. 1993). The question, then, is whether *Gant* changes the analysis.

In *Gant*, the Supreme Court considered the scope of the search-incident-to-arrest exception in a case involving a warrantless search of a vehicle. The Court held that, under *Chimel*, a search of a vehicle incident to arrest is proper "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." 556 U.S. at 343. The Court also held that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id.* (internal quotation marks omitted). The Court held that neither of those rationales applied under the facts of that case. First, the passenger compartment of the vehicle would not reasonably have contained evidence of the driving-under-suspension offense for which the defendant had been arrested. *Id.* at

18

344. Second, because the defendant had been removed from the vehicle, handcuffed, and locked into the back seat of a police car when the search occurred, the "police could not reasonably have believed . . . that Gant could have accessed his car at the time of the search." *Id.*

Ferebee argues that the search of his backpack was not proper under *Gant* because he was handcuffed and standing outside of the house when the backpack was searched inside. We disagree.

We need not decide whether Ferebee somehow waived his right to rely on *Gant* by the manner in which he argued the issue below, as the government insists, nor need we affirmatively decide the extent to which *Gant* applies to cases not involving vehicle searches. Instead, we will assume for purposes of this case that *Gant* is not limited to vehicle searches and that, under *Gant*, a search incident to arrest is proper only if the defendant is "unsecured and within reaching distance" of the property being searched, such that the police could reasonably believe that the defendant could access the property at the time of the search. Even with that assumption, however, we cannot say the district court erred in upholding the search, even though Ferebee was handcuffed at the time of the search.

The information before the district court included a video recorded by Officer Sinnott's body camera. The video, which does not show the backpack search, begins as Ferebee is being handcuffed behind his back and is then led by Officer Sinnott outside the house through the open front door. The door remains open as Sinnott searches Ferebee again. After the search, Ferebee, Sinnott and others mill about in a small area only a few

19

steps away from the open front door with the officers and backpack immediately inside the front door. The video shows that Sinnott and Ferebee are never very far apart, but Ferebee is not under Sinnott's physical control. There is no impediment to Ferebee's movement beyond the handcuffs, and it is clear from the video that Ferebee is only a few feet outside the house and thus could reach the other officers and the backpack within seconds.

Thus, the situation here is quite different from *Gant*. Whereas the defendant in *Gant* was handcuffed and locked in the back of a police car, Ferebee was only a few steps away from the backpack. He was handcuffed, but he still could walk around somewhat freely and could easily have made a break for the backpack inside the house. Under these circumstances, we do not believe that Ferebee was "secured" within the meaning of *Gant*. As other courts have recognized, "handcuffs are not fail-safe," *United States v. Shakir*, 616 F.3d 315, 320 (3d Cir. 2010), and they do not "instantly and completely eliminate all risks that the suspect will flee or do [the officers] harm," *United States v. Sanders*, 994 F.2d 200, 209 (5th Cir. 1993). Indeed, the body-camera video reveals that *after* Ferebee was handcuffed and led outside, he managed to wad up and throw away his marijuana joint without attracting the attention of the police officers around him. Thus, when considering the propriety of the search, we need not rely solely on the speculative possibility that a handcuffed defendant can still be dangerous, as we have in this case a handcuffed defendant who in fact was able to tamper with evidence while handcuffed. We therefore conclude that, despite the fact that Ferebee was handcuffed, the police reasonably could have believed that Ferebee could have accessed the backpack. *See Shakir*, 616 F.3d at 321 ("[After *Gant*,] a search is permissible incident to a suspect's arrest when, under all the

20

circumstances, there remains a reasonable possibility that the arrestee could access a weapon or destructible evidence in the container or area being searched. Although this standard requires something more than the mere theoretical possibility that a suspect might access a weapon or evidence, it remains a lenient standard."). Accordingly, we hold that the warrantless search of the backpack was a proper search incident to arrest under *Gant*. *See United States v. Cook*, 808 F.3d 1195, 1199-1200 (9th Cir. 2015) (search of backpack was proper under *Gant* even though defendant was face-down on the ground with his hands cuffed behind his back at the time of the search because there was an objectively reasonable possibility that the defendant could break free and reach the backpack); *United States v. Perdoma*, 621 F.3d 745, 750-53 (8th Cir. 2010) (warrantless search of bag in public bus terminal was appropriate after *Gant* even though defendant was handcuffed and in the presence of several police officers); *Shakir*, 616 F.3d at 321 (warrantless search of bag was proper search-incident-to-arrest even though defendant was handcuffed and guarded by two policeman when bag was at defendant's feet and thus accessible to him). *But see United States v. Knapp*, 917 F.3d 1161 (10th Cir. 2019) (finding warrantless search of closed purse improper under *Gant* where defendant was handcuffed and standing three feet away from purse and one officer was standing next to her and two other officers were nearby).

## IV.

Accordingly, for the foregoing reasons, we reject Ferebee's challenges to the warrantless search of his backpack and affirm his conviction.

21

*AFFIRMED*

FLOYD, Circuit Judge, dissenting:

Unlike my colleagues in the majority, I do not believe that Ferebee abandoned his bag. Nor do I believe that the government has shown that the warrantless search of Ferebee's bag fell within the search-incident-to-arrest exception. Therefore, I respectfully dissent.

1.

The threshold question in this case is whether Ferebee had a reasonable expectation of privacy in his bag when Officer Grosse searched it. There is no serious question that Ferebee had a reasonable expectation of privacy in his bag up to the moment he told Officer Bensavage that the bag was not his. After all, it is well-established that people generally have a reasonable expectation of privacy in the contents of opaque bags that they own (or have permission to use) and that they keep within their immediate control. *See, e.g., Bond v. United States*, 529 U.S. 334, 338 (2000) (bus passenger had reasonable expectation of privacy in "opaque bag" that he had placed in overhead compartment "directly above his seat").

The government, however, argues that Ferebee abandoned his bag before Grosse searched it, thereby giving up his reasonable expectation of privacy in the bag's contents. The argument itself is unsurprising: it has long been understood that a person cannot, under the Fourth Amendment, challenge a warrantless search of abandoned property. *Abel v. United States*, 362 U.S. 217, 241 (1960) ("There can be nothing unlawful in the Government's appropriation of . . . abandoned property."). Property is abandoned when

23

the objective evidence indicates that the property owner or possessor of the property voluntarily distanced himself from his interest in the property to such an extent that, in the eyes of a reasonable person, it was not objectively reasonable for him to expect the property to remain private. *See United States v. Leshuk*, 65 F.3d 1105, 1111 (4th Cir. 1995) (abandonment turns on "whether the evidence sufficiently established that [the defendant] abandoned any property interest he had" in property searched by the police); *see also United States v. Ramos*, 12 F.3d 1019, 1022 (11th Cir. 1994) (when government asserts that property searched without a warrant was abandoned, "the critical inquiry is whether the person prejudiced by the search voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." (internal punctuation and alterations omitted)).

In the proceedings below, the district court agreed with the government, concluding that Ferebee had abandoned his bag before it was searched. According to the district court, after the officers entered the room where he was sitting, Ferebee did two things: (1) he told Officer Bensavage that the bag was not his, and (2) at the same time, he held the bag out to a group officers as if inviting them to take it. The district court concluded that Ferebee, by this combined statement and gesture, "unequivocally denied ownership of the bag"; in doing so, he "abandoned the backpack" for purposes of the Fourth Amendment. J.A. 98, 100.

Notably, as I understand it, the district court's conclusion that Ferebee abandoned his bag is legal, not factual. *See United States v. Stevenson*, 396 F.3d 538, 545 (4th Cir. 2005)

24

(separating district court's findings of fact from ultimate legal conclusion that defendant had abandoned his reasonable expectation of privacy in his property). Hence, although we review for clear error the findings of fact underlying the district court's conclusion, we review de novo whether those findings amount to abandonment as a matter of law. *Id.* This comports with our general approach to Fourth Amendment questions involving a reasonable expectation of privacy: as we have stated, "a lower court's determination that a reasonable expectation of privacy does or does not exist 'is a legal conclusion involving substantive Fourth Amendment analysis . . . subject to full review by this court.'" *United States v. Ramapuram*, 632 F.2d 1149, 1155 (4th Cir. 1980) (quoting *United States v. Vicknair*, 610 F.2d 372, 379 (5th Cir. 1980) (alteration in source)).[1]

Against that background, let us first consider the district court's factual finding that that Ferebee "picked up the bag and extended it towards the officers" as if to say, "this is not my bag, take it." J.A. 98. I believe this finding to be clearly erroneous. That is, having reviewed the record, I am "left with a definite and firm conviction that a mistake has been made . . . ." *Consol. Coal Co. v. Local 1643, United Mine Workers of Am.*, 48 F.3d 125,

---

[1] This is a point of division among our sister circuits. *Compare United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001) (whether the facts as given amount to abandonment is a matter of law subject to de novo review); *and United States v. Ojeda-Ramos*, 455 F.3d 1178, 1187 (10th Cir. 2006) (court reviews de novo whether defendant had an objectively reasonable expectation of privacy in property said to have been abandoned); *with United States v. Crumble*, 878 F.3d 656, 659 (8th Cir. 2018) (district court's determination of abandonment is a factual finding reviewed for clear error); *United States v. Stephens*, 206 F.3d 914, 916–17 (9th Cir. 2000) (same); *United States v. Lee*, 916 F.2d 814, 818 (2d Cir. 1990) (same); *United States v. Manner*, 887 F.2d 317, 327 n.9 (D.C. Cir. 1989) (same).

128 (4th Cir. 1995).

The district court grounded its finding on a single piece of evidence: Bensavage's testimony. According to the district court, Bensavage "testified that he saw [Ferebee] pick up the bag from the floor, stand, hold it out towards the officers, and disclaim ownership of the bag." J.A. 95. Having thus paraphrased Bensavage's testimony, the district court stated that "[a]t the same time [Ferebee] disclaimed ownership [of the bag], he picked up the bag and extended it towards the officers," thereby "reinforc[ing]" his verbal disclaimer. J.A. 98.

As I see it, neither Bensavage's testimony nor the record as a whole supports the district court's version of events. Bensavage did not testify that Ferebee held his bag out toward the officers. *See* J.A. 46–58. He merely testified that Ferebee "picked up a black bag with his left hand."[2] J.A. 48. Indeed, none of the officers who were present during Ferebee's arrest described a scene like the one painted by the district court. No one but Bensavage reported hearing Ferebee's statement that the bag was not his, and no one—not even Bensavage—reported that Ferebee extended the bag toward the officers. Perhaps for that reason, in the proceedings below, the government did not argue that Ferebee had held his

---

[2] In an earlier report on the incident, Bensavage wrote that Ferebee, having been ordered off the couch, "picked up a black backpack with his left hand as he stood up and held it out to his side as Officer B. Sinnott search[ed] his person due to his possession of marijuana." J.A. 17. The most natural reading of this report is that while Sinnott patted him down, Ferebee held his arms away from his sides. In my view, to arrive at this understanding of events requires no inference at all: Bensavage's report is simply a description of how any normal person, holding his or her bag, would respond to a police officer's pat-down.

26

bag out to the officers as if inviting them to take it.  Even viewed in the light most favorable to the government, the record indicates only that Ferebee held his bag in his left hand, out to his side, while an officer patted him down.  It was clear error for the district court to find that Ferebee disclaimed ownership of his bag while holding the bag out to the officers as if to say, "this is not my bag, take it."  J.A. 98.

This does not end the inquiry into abandonment.  According to the government, even if the district court clearly erred in finding that Ferebee held his bag out to the officers as if inviting them to take it, the error was harmless, because the district court could have relied solely on Ferebee's disclaimer of ownership to conclude that Ferebee abandoned his bag before the search.  My colleagues in the majority agree.  Given the circumstances, I cannot.

In considering this question, I would adopt two sensible principles that our sister circuits have applied in the same context but that our own precedent has not explicitly addressed.  First, the government bears the burden of proving abandonment by a preponderance of the evidence.  *United States v. Denny*, 441 F.3d 1220, 1226 (10th Cir. 2006); *United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2003); *cf. United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001) (stating that government bears burden of proving abandonment without specifying whether government must show abandonment by a preponderance of the evidence).  Second, in deciding whether the government has met its burden, we eschew per se rules and conduct a totality-of-the-circumstances analysis.  *United States v. Lopez-Cruz*, 730 F.3d 803, 808 (9th Cir. 2013); *United States v. Harrison*, 689 F.3d 301, 307 (3d Cir. 2012); *United States v. Hawkins*, 681 F.2d 1343, 1346 (11th

27

Cir. 1982) ("[A] disclaimer of ownership, while indeed strong indication that a defendant does not expect the article to be free from government intrusion, is not necessarily the hallmark for deciding the substance of a fourth amendment claim.")

Viewing the present case though that lens, it seems to me that in light of the totality of the circumstances, the evidence of abandonment does not preponderate. Ferebee's disavowal of ownership is evidence that he abandoned his bag, but his nonverbal conduct is evidence that he never intended to give up his possessory interest in the bag and expected the bag's contents to remain private. In other words, Ferebee's disclaimer of ownership— an isolated statement made to Bensavage and unreported by any other officer in the room, despite the officers' close proximity—weighs in the government's favor, but it is counterbalanced by Ferebee's conspicuous and continuous physical possession of the bag.

I do not mean to suggest that someone who is holding a bag can never abandon it— only that someone who is treating his bag in a way perfectly consistent with an ongoing possessory interest does not give up his reasonable expectation of privacy in the bag based on one statement, neither unsolicited nor emphatic, made to a single law enforcement officer in what was, in all likelihood, a confusing and stressful moment. It is true that our cases—especially *Leshuk*, 65 F.3d at 1105, and *United States v. Han*, 74 F.3d 537 (4th Cir. 1996)—provide support for the majority and make this a close call. Yet neither *Leshuk* nor *Han* required us to address the circumstances that face us now: a defendant who disclaimed ownership of his property but also picked up his property when approached by law enforcement and then held onto his property while officers searched his person and the area around him. The distinctions I would draw are fine, but we must sometimes be willing to

28

draw fine distinctions in order to prevent the protections of the Fourth Amendment from eroding case by case, millimeter by millimeter, over time.

In the end, I simply cannot bring myself to believe that a reasonable, objective person watching Ferebee's arrest would have concluded, based on the totality of Ferebee's words and actions, that Ferebee was indifferent to, or had no interest in, what happened to his bag, such that he could no longer have reasonably expected the contents of the bag to remain private. Thus, though I understand what led my friends in the majority to their conclusion, I would hold that as a matter of law, Ferebee did not abandon his bag and has standing to challenge the bag's search under the Fourth Amendment.

2.

Despite holding that Ferebee abandoned his bag, the majority, in extensive dicta, goes on to conclude that even if Ferebee had not abandoned his bag, the search would not have required a warrant because it was incident to Ferebee's arrest. I believe my colleagues are mistaken.

The search-incident-to-arrest exception to the warrant requirement derives largely from *Chimel v. California*. 395 U.S. 752 (1969). In that case, the Supreme Court held that when an officer makes an arrest, it is reasonable—and therefore not prohibited by the Fourth Amendment—for the officer to search "the arrestee's person and the area within his immediate control." *Id.* at 763 (internal quotation marks omitted). The Court defined "the area within the arrestee's immediate control" as the area "from which [the arrestee] might

gain possession of a weapon or destructible evidence." *Id.*

The search-incident-to-arrest doctrine has developed significantly in the vehicle context. In *New York v. Belton*, 453 U.S. 454, 460 (1981), the Supreme Court, applying *Chimel*, held that when a law-enforcement officer "has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," as well as any containers therein. *Id.* This expansive application of *Chimel* "was based in large part on [the Supreme Court's] assumption 'that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach.'" *Arizona v. Gant*, 556 U.S. 332, 341 (2009) (quoting *Belton*, 453 U.S. at 460).

We, like our sister circuits, went on to apply *Belton* outside the vehicle context when determining whether a search of a defendant's bag qualified as a search incident to arrest. For instance, we stated in *Han* that "*Belton* established that incidence to arrest continues to justify a search even after the likelihood of danger or destruction of evidence has been eliminated . . . ." 74 F.3d at 543. Therefore, we held that "officers may separate the suspect from the container to be searched, thereby alleviating their safety concerns, before they conduct" a valid search incident to arrest. *Id.* at 542; *see also United States v. Litman*, 739 F.2d 137, 139 (4th Cir. 1984) (applying *Belton* outside vehicle context).

But in *Gant*, the Supreme Court revisited *Belton* and recalibrated its gloss on *Chimel*, holding that "the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest *only when the arrestee is unsecured and within reaching distance* of the

30

passenger compartment at the time of the search." 556 U.S. at 343 (emphasis supplied). The Supreme Court specifically reiterated that the search incident to arrest exception is intended to protect officer safety and prevent the destruction of evidence. *Id.* at 339. Thus, "[i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Id.*

*Gant*'s narrower interpretation of the search-incident-to-arrest exception has thus supplanted the expansive interpretations that flowed from *Belton*. And like *Belton*, *Gant* has repeatedly been applied outside the vehicle context.[3] Indeed, several of our sister circuits have turned to *Gant* to decide whether the warrantless search of an arrestee's bag qualifies as a search incident to arrest if the search occurs after the arrestee has been handcuffed. The Tenth Circuit, applying *Gant*, has recently held that the search of an arrestee's purse was not a search incident to arrest when the arrestee was in handcuffs and several police officers were nearby—even though the purse was only a few feet away from the arrestee. *United States v. Knapp*, 917 F.3d 1161, 1169 (10th Cir. 2019). The Ninth and Third Circuits have held that the warrantless search of an arrestee's bag, made immediately after the arrestee is handcuffed, falls within the search-incident-to-arrest exception when the arrestee remains within reaching distance of the bag and officers have an objectively reasonable belief that the arrestee is armed and dangerous. *United States v.*

---

[3] The government seeks to convince us that Ferebee waived any argument from *Gant* during the proceedings below. That contention is meritless. Ferebee did not waive his argument from *Gant*, despite the government's selective quotation of his counsel.

31

*Cook*, 808 F.3d 1195, 1199–200 (9th Cir. 2015) (arrestee's bag was "right next to him," officers knew that arrestee had "used the same backpack earlier in the day to transport drugs," and officers "had already recovered two firearms from [a] house associated with [the arrestee's] co-conspirator"); *United States v. Shakir*, 616 F.3d 315, 319, 321 (3d Cir. 2010) (arrestee's bag was "literally at his feet," arrest occurred "in a public place with some 20 people around," officers "had reason to believe that one or possibly more of [the arrestee's] accomplices was nearby," and one of the arrestee's suspected accomplices "was restrained only by two unarmed private security officers."). The Eighth Circuit has held that when a handcuffed arrestee remains "in close proximity" to his bag and has "already run from the officers once," a warrantless search of the bag falls within the search-incident-to-arrest exception. *United States v. Perdoma*, 621 F.3d 745, 750–51 (8th Cir. 2010).[4]

I see nothing in *Gant* or the opinions of our sister circuits to convince me that the search-incident-to-arrest exception applies here. At the time of the search, Ferebee was handcuffed and indisputably not within reaching distance of his bag. The video of the arrest contains no inkling of physical struggle or attempted flight; what it shows is Ferebee calmly being led outside, after which he calmly stands in the yard next to an officer. Thus, Ferebee was restrained, physically compliant, and separated from the area to be searched. An officer stood next to him, and multiple officers remained inside with the bag. Both

---

[4] *Compare United States v. Casper*, 34 F. Supp. 3d 617, 626 (E.D. Va. 2014) (holding that search of defendant's coat was not a lawful search incident to arrest when defendant was separated from coat, placed in handcuffs, and led outside of room before search occurred; exception did not apply because defendant "had no reasonable possibility of reaching the coat" at the time of search).

Ferebee and the bag were manifestly under the officers' control, and Ferebee was thoroughly outnumbered by the law enforcement officers on the scene. Broadly, there was no exigency; specifically, the search-incident-to-arrest conditions established by the Supreme Court—that the arrestee be both unrestrained and within reaching distance of the area to be searched—were not present. *See Gant*, 129 S. Ct. at 1719.

It is the government's burden to prove otherwise. *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971). Yet the best the government can do is speculate that Ferebee's handcuffs *could* have spontaneously failed; or that Ferebee, still handcuffed, *could* have rushed back into the house, dodged past the couch and the various officers crowding the room, and, in a remarkable feat of dexterity, reached into his backpack to destroy evidence or retrieve his firearm. This Court should not permit the government to circumvent the Fourth Amendment on such patently flimsy grounds.[5] In doing so, the majority pushes the search-incident-to-arrest exception further than the Supreme Court or any of our sister circuits, straying from the principle that exceptions to the warrant requirement are to be "jealously and carefully drawn." *Coolidge*, 403 U.S. at 455. I cannot join them: this was not a valid search incident to arrest.[6]

---

[5] From my perspective, that Ferebee managed to crumple up and toss away a marijuana blunt that was already in his possession while he was in handcuffs does not make it more likely that, while handcuffed, he would have been able to re-enter the house and reach into his backpack. The former is something that any average person could do. The latter would be quite exceptional.

[6] A final point bears mentioning. The district court, seeking a third justification for its denial of Ferebee's motion to suppress, concluded that the evidence recovered from Ferebee's bag fell within the saving ambit of the inevitable-discovery rule. I agree with (Continued)

33

3.

For the reasons stated, I respectfully dissent.

_____

my colleagues that the district court erred. When the government seeks to avoid the suppression of evidence by invoking the inevitable-discovery rule, it is the government's burden to prove that the inevitable-discovery rule applies. *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017). Here, the government did not even argue that the inevitable-discovery rule applied; the district court raised the argument sua sponte. That was a serious mistake. When a federal court takes it upon itself to make a legal argument that the prosecution has not made, based on evidence that the prosecution has not produced, the legitimacy of our criminal-justice system is degraded. The court has a duty to ensure that the government is held to its burden of proof in every criminal case. Here, the district court turned that duty on its head.