Filed 8/22/25  P. v. Rodriguez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>JAIME RODRIGUEZ,<br><br>　　Defendant and Appellant. | H051398<br>(San Benito County<br>Super. Ct. No. CR2101087) |

Convicted of possessing an automatic firearm following his plea, appellant Jaime Rodriguez challenges the denial of his motion to suppress the firearm that the police found with his wallet in a locked container in the trunk of his girlfriend's car.  The police had searched the car and lockbox after the car, having collided with a house, was left at the scene by its fleeing occupants.  We do not question Rodriguez's expectation of privacy in the lockbox at the time of the collision.  But in our independent review of the facts found by the magistrate that are supported by substantial evidence, we conclude Rodriguez abandoned that privacy interest when he left the car and lockbox at the scene.  We will affirm.

## I. BACKGROUND

The San Benito County District Attorney charged Rodriguez with a single felony count of possession of a machine gun (Pen. Code, § 32625, subd. (a).)[1] The putative machine gun was found in the lockbox search that is the subject of this appeal.

### A. *The Preliminary Hearing and Motion to Suppress*

At the preliminary hearing, Rodriguez moved to suppress the evidence found in the lockbox. (See § 1538.5, subd. (f)(1).)

Don Tong, a senior police officer for the City of Hollister Police Department, was the only testifying witness. On February 1, 2021, Rodriguez accompanied his girlfriend to the police station as she reported to Tong that her car had been stolen the night before "when [the girlfriend] . . . tr[ied] to give a hitchhiker a ride." Present when his girlfriend related this to Tong, Rodriguez gave "basically" the same statement to Tong. Both Rodriguez and his girlfriend had "fairly fresh" visible injuries that were consistent with having been in a traffic collision.

Tong testified that he spoke with another officer, Pedro Torres, who had been investigating a vehicle collision with a residence the day before Rodriguez and his girlfriend reported the car theft. Torres told Tong that a wallet with Rodriguez's driver's license and a handgun—"altered for fully automatic fire" by a Glock switch—were found in the trunk of the vehicle.[2] The handgun was registered to Rodriguez.

Tong collected surveillance footage from the collision scene. The time-stamped video depicted events just before 11:00 p.m. on January 31, 2021. In reviewing the video, Tong observed "the vehicle, the traffic collision, [and] the vehicle sliding into the

---

[1] Undesignated statutory references are to the Penal Code.

[2] Rodriguez objected that Torres's hearsay statements to Tong were not admissible as to the suppression motion.

home," after which two "blurry" individuals "emerge from" the vehicle and flee the scene.

The parties stipulated to the following facts: (1) In accordance with Torres's report, Torres opened a locked black Volarez lockbox found in the trunk of "this vehicle";[3] (2) the gun and Rodriguez's wallet were inside the lockbox; and (3) an unloaded firearm magazine was found outside the box in the trunk.

Rodriguez did not testify but through counsel argued that he had a reasonable expectation of privacy over the interior of the lockbox because he locked it.

Denying the motion to suppress, the magistrate identified the "fundamental issue" as the "reasonable expectation of privacy with respect to the entire . . . vehicle, the trunk, what's in the trunk" and concluded he had "heard nothing that [asserts] an expectation of privacy over those items." The magistrate also found that the vehicle was effectively abandoned when Rodriguez and his girlfriend "took off" from the collision scene. The magistrate held Rodriguez to answer on the single count of possession of a machine gun.

Rodriguez renewed his motion to suppress in the superior court. (See § 1538.5, subd. (i).) The same judge who had acted as magistrate at the preliminary hearing heard and denied the renewed motion.[4] The court determined that the prosecution had shown by a preponderance of the evidence that a reasonable person would believe that the vehicle and its contents were abandoned. (But see *Blakes v. Superior Court* (2021)

---

[3] There is no dispute that the lockbox was recovered from the trunk of the girlfriend's car after that car crashed into a residence. Nor did the parties dispute that the car depicted in the surveillance video was the girlfriend's car. In this context, we understand the parties' stipulation concerning "this vehicle" to embrace the undisputed facts about the girlfriend's car—the only vehicle discussed at the hearing.

[4] "[S]uperior court review of a challenged ruling or order made by a superior court judge or a magistrate shall be performed by a superior court judge other than the judge or magistrate who originally made the ruling or order, unless agreed to by the parties." (§ 859c.) Rodriguez has not disputed the propriety of a superior court judge reviewing his own order as magistrate.

3

72 Cal.App.5th 904, 910 (*Blakes*) [disregarding trial court's findings and reviewing the magistrate's original determination, where the renewed motion was submitted on the preliminary hearing transcript under § 1538.5, subd. (i)].)

**B.      *The Plea, Sentencing, and Appeal***

By agreement of the parties, the prosecution amended the information to add a second count for possession of an assault weapon (§ 30605, subd. (a)), to which Rodriguez pleaded no contest.  The trial court suspended imposition of sentence and admitted Rodriguez to formal probation for two years.  One probation condition required Rodriguez to serve one day in county jail, satisfied by one day of presentence credit.

Rodriguez timely appealed.

## II.      DISCUSSION

**A.      *Rodriguez's Motion to Suppress***

" 'The "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person . . . has a legitimate expectation of privacy in the invaded place." ' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 365 (*Bryant*).) A legitimate expectation of privacy is an expectation that " 'society is prepared to recognize as reasonable,' " and the reasonableness of that expectation depends on "the totality of the circumstances." (*Ibid*.)  Even a legitimate expectation of privacy may become unreasonable, however, if the defendant " ' " 'so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search.' " ' " (*People v. Parson* (2008) 44 Cal.4th 332, 346 (*Parson*).)  And our standard of review is well established:  We deferentially review express and implied findings of historical facts for substantial evidence, but we independently review the ruling on the mixed question of how the relevant law applies to those facts, irrespective of the lower court's rationale.  (*Bryant*, at p. 364; see also *Blakes*, *supra*, 72 Cal.App.5th at p. 910.)

4

### 1. *The Magistrate's Factual Findings*

To begin, then, we consider the facts found by the magistrate. Certain historical facts were stipulated or undisputed for the limited purpose of the suppression motion. It was stipulated that the lockbox in the trunk of the car found at the collision site was locked when the police searched it, and that Rodriguez's wallet and identification were in the lockbox. It was undisputed that the firearm Rodriguez sought to suppress was in the lockbox as well. Nor was it disputed that the firearm was registered to Rodriguez, or that California's prohibition on the concealed carrying of firearms exempts the transport of an unloaded handgun secured in the trunk of a motor vehicle while in transit, and in a locked container when carried directly to or from that motor vehicle. (See § 25610 [permitting transport of unloaded handguns in locked containers]; see also § 30945, subd. (g) [requiring registered assault weapon be in locked container during transport].) It was also undisputed that the girlfriend's car was the car at the collision scene.

To the extent historical facts were disputed, the magistrate expressly found that Rodriguez and his girlfriend were the occupants of the girlfriend's car seen fleeing the car after the collision depicted in the surveillance video.[5] Implicit in this express finding is its necessary predicate, that their report to Tong of the theft of the car was false. These factual findings are adequately grounded in the time-stamped surveillance video of the collision, the presence of Rodriguez's wallet and identification in the lockbox, and Tong's testimony about the injuries he observed on Rodriguez and his girlfriend when they reported the putative theft. On substantial evidence review, because such circumstances " 'reasonably justify the trier of fact's findings, reversal . . . is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

---

[5] The magistrate stated that Rodriguez and his girlfriend "took off" after the crash.

Rodriguez disputes the admissibility of Tong's testimony about hearsay statements Torres related in the course of Tong's investigation and asserts that "the prosecution did not produce competent evidence to sustain its burden, and . . . the trial court's denial of [a]ppellant's burden is therefore unsupported by substantial evidence."[6] He does not, however, account for the surveillance video, the parties' stipulations, or Tong's first-hand testimony, nor does he identify any of the disputed facts above as lacking evidentiary support. Rather than reasoned argument explaining how the evidence he agrees was competent and admissible fails to adequately support these disputed facts, he instead identifies exceptions to the warrant requirement that he broadly asserts turned on inadmissible evidence. We accordingly " 'may and do "disregard conclusory arguments that . . . fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." ' " (*Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 498.)

## 2. *Rodriguez's Interest in the Lockbox*

" 'A defendant has the burden to establish a legitimate expectation of privacy in the place searched.' " (*Bryant*, *supra*, 60 Cal.4th at p. 365.) Ownership or "possession of a seized good" is not dispositive. (*United States v. Salvucci* (1980) 448 U.S. 83, 92–93 [repudiating prior doctrine conferring "automatic standing" to challenge search on

---

[6] Addressing Rodriguez's objection that hearsay admissible under section 872, subdivision (b) at the preliminary hearing was not admissible for the concurrently heard suppression motion, the magistrate announced, "I have processed that which is [admissible] with respect to the preliminary hearing. And if a motion is made to exclude, I may exclude some evidence pursuant to the [section] 1538.5 [motion]. . . . And I processed and I made my rulings accordingly." Yet the magistrate overruled hearsay objections to Torres's out-of-court statements (to Tong and in his report) that were relevant only for their truth and did so without delimiting the purpose for which the hearsay was admitted.

possessor of a seized good].)[7]  But a defendant's property or possessory interest in the seized good is among the relevant circumstances to be considered, along with " ' " ' "whether he has the right to exclude others from that place; whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises." ' " ' "  (*Bryant*, at p. 365.)

We acknowledge, as the Attorney General notes, that Rodriguez introduced no direct evidence that he was the one who deposited his property in the lockbox, locked it, and put it in the trunk of his girlfriend's car.  (See *Simmons v. United States* (1968) 390 U.S. 377, 394 ["when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection"]; *Bryant*, *supra*, 60 Cal.4th at p. 368, quoting *Simmons*, at p. 394.)  But the Attorney General cites no authority holding that any one circumstance is essential or dispositive in the totality of the circumstances relevant to a defendant's legitimate expectation of privacy.  And a defendant's subjective expectation of privacy, like any mental state, can be established by circumstantial evidence.  (See *People v. Maury* (2003) 30 Cal.4th 342, 384 [inquiry addresses whether " 'the individual manifested a subjective expectation of privacy' "].)  Otherwise every suppression motion would invariably require the moving defendant's testimony.[8]  Here, those circumstances must include the magistrate's factual finding that Rodriguez was in the car as it transported the gun, the fact that the gun was registered to Rodriguez, and the parties' stipulation that both the gun and his wallet were secured in

---

[7] California law applies federal constitutional standards to a motion to suppress evidence under section 1538.5.  (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1212.)

[8] We note that the magistrate made no express factual findings about Rodriguez's subjective expectation of privacy, relying solely on what it perceived as the absence of evidence from which any finding could be made.

7

the lockbox, together with the absence of any indicia suggesting anyone else's interest in the lockbox or its contents. All of which, in our independent review, points to Rodriguez's use of the lockbox, just as section 25610, subdivision (b) contemplates when one carries a handgun "directly to or from any motor vehicle."

For these reasons, we conclude that Rodriguez had a legitimate interest in privacy in the lockbox.

### 3.    *Abandonment*

It is not enough, however, that Rodriguez had a legitimate expectation of privacy in the lockbox when depositing his gun and wallet within: He had to have retained that expectation of privacy at the time of the search. A warrantless search of abandoned property is permissible, despite the Fourth Amendment's guarantees, because a person who abandons property relinquishes the reasonable expectation of privacy in that property. (*Parson*, *supra*, 44 Cal.4th at p. 345.) " ' " 'Abandonment here is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search.' " ' " (*Id.* at p. 346.) This is an objective inquiry dependent not on " 'the defendant's subjective intent' " but on " ' " 'words, acts, and other *objective facts.*' " ' " (*Ibid.*) As an issue of fact, " 'the court's finding [on abandonment] must be upheld if supported by substantial evidence.' " (*Ibid*.) Although the moving defendant bears the burden of proving a legitimate expectation of privacy in the place searched, the government bears the burden of proving abandonment. (See *United States v. Cofield* (11th Cir. 2001) 272 F.3d 1303, 1306; *United States v. Pitts* (7th Cir. 2003) 322 F.3d 449, 456; *United States v. Denny* (10th Cir. 2006) 441 F.3d 1220, 1226.)

Here, substantial evidence supports the magistrate's factual determination that Rodriguez so relinquished his interest in the lockbox that he no longer retained a reasonable expectation of privacy at the time of the search. Tong located and reviewed surveillance video showing the traffic collision, the vehicle sliding into a home, and two

8

people exiting the vehicle and fleeing.[9]  Tong personally observed injuries consistent with a car accident on Rodriguez and his girlfriend the day after the events shown in the surveillance video.  From these facts, the magistrate permissibly inferred that Rodriguez and his girlfriend were the two people shown fleeing a crashed vehicle left on someone else's property.[10]  And the stipulation that Torres found the lockbox in the trunk of "this vehicle" establishes that Rodriguez left the lockbox behind.  (See *People v. Pereira* (2007) 150 Cal.App.4th 1106, 1113 ["appropriate test is whether defendant's words or actions would cause a reasonable person in the searching officer's position to believe that the property was abandoned"].)  From this, the trial court could permissibly infer that Rodriguez had relinquished any legitimate expectation of privacy by abandoning the vehicle and the lockbox within it.  (See *Parson*, *supra*, 44 Cal.4th at p. 346.)  And notably absent from either counsel's examination of Tong was any indication that Rodriguez or his girlfriend in reporting the vehicle theft mentioned any property in the vehicle, let alone any interest in that property.

For example, in *United States v. Oswald* (6th Cir. 1986) 783 F.2d 663 (*Oswald*), the court affirmed a finding that Oswald abandoned a briefcase containing $300,000 worth of cocaine a deputy sheriff found in the trunk of a burned-out automobile left on the berm of an interstate highway.  Oswald locked the briefcase in the trunk of the car, and when he was driving on the interstate in rural Tennessee his car burst into flames.

---

[9] By failing to object, Rodriguez forfeited any claim of error as to Tong's relating the content of the nonhearsay surveillance video.  (See *People v. Goldsmith* (2014) 59 Cal.4th 258, 274 [surveillance video is not hearsay]; *People v. Delgado* (2017) 2 Cal.5th 544, 580.)

[10] Rodriguez asserts that the "persons who crashed the car into the house were never identified," and the absence of evidence that Rodriguez fled the scene leaving the vehicle and lockbox behind precludes a finding of abandonment.  But there is substantial evidence that Rodriguez and his girlfriend were the two occupants who fled, and that they later falsely reported the vehicle stolen.

(*Oswald*, at p. 664.) Afraid that either the car would explode or that authorities on putting out the fire would discover the cocaine and connect it to him, Oswald hitched a ride from a passing motorist and fled the scene, telling the motorist that the car would be reported stolen. (*Ibid.*) After the fire was extinguished, law enforcement found and removed the metal briefcase from the car. (*Ibid.*) Within a couple of hours, an officer pried open the metal briefcase and discovered the cocaine. (*Id.* at p. 665.) The evening of the fire and the next day Oswald made some effort to discover what had become of the car, but he quickly abandoned the enterprise. (*Ibid.*) The court acknowledged that a "briefcase is property of a kind in which the owner . . . normally has a strong expectation of privacy." (*Id.* at p. 666.) But leaving the briefcase in "an unlocked burned-out automobile at the side of a highway in the country can fairly be thought to have a much lower expectation of privacy." (*Id.* at p. 667.)

Similarly, in *People v. Daggs* (2005) 133 Cal.App.4th 361 (*Daggs*), the reviewing court found no error in the trial court's determination that a defendant abandoned his cell phone at the scene of a robbery by accidentally dropping it and failing to recover it. (*Daggs*, at pp. 364, 366–367.) The court explained that it is "well established that property is abandoned when a defendant voluntarily discards it in the face of police observation, or imminent lawful detention or arrest, to avoid incrimination." (*Id.* at p. 365.)

We recognize that Rodriguez's report to Tong, the day after the accident, could militate against a finding of abandonment.[11] In both *Oswald* and *Daggs*, the reviewing courts emphasized the lack of meaningful efforts to recover the property after it was initially left behind. (*Oswald*, *supra*, 783 F.2d at p. 667 [holding that "feeble hope of regaining possession of the cocaine is hardly enough to vitiate the finding of

_____

[11] Excluding inadmissible hearsay, it is not clear when, after the initial flight, law enforcement searched the lockbox. So the admissible evidence does not foreclose the possibility that the search was conducted after the vehicle was reported stolen.

abandonment"]; *Daggs*, *supra*, 133 Cal.App.4th at p. 366 [failure to reclaim cell phone left at scene of robbery in week following crime supported inference that the phone had been abandoned by the robber who would not reclaim it]; see also *United States v. Williams* (5th Cir. 1978) 569 F.2d 823, 826 [where driver knew he was pursued by government officers and left a trailer unguarded and unlocked in a parking area, his only conceivable purpose was to rid himself of the incriminating contents therein and his hope that he might reacquire the trailer later did not overcome evidence of abandonment].) The act of reporting the vehicle stolen, even after a significant delay, could be understood to reassert a possessory interest in the vehicle *and* its contents. At the same time, falsely reporting that it had been stolen before the collision disclaimed any responsibility for the collision (and subsequent flight) and could alternatively be understood to disclaim responsibility for any of the vehicle's incriminating contents. Nothing in Tong's testimony about their report suggests that Rodriguez or his girlfriend addressed any of the contents of the vehicle in their report. At bottom, the act of reporting the vehicle stolen does not negate the substantial evidence of abandonment that supports the trial court's determination. Viewing the evidence in the light most favorable to the magistrate's finding that Rodriguez and his girlfriend voluntarily left the car at the collision site and falsely claimed theft a day later, Rodriguez had relinquished at least temporarily any reasonable expectation of privacy in the lockbox and its contents when it was searched.

The cases Rodriguez cites, where reviewing courts found no abandonment, are inapposite. (See *United States v. Tolbert* (6th Cir. 1982) 692 F.2d 1041, 1044 [leaving airport without claiming checked suitcase may be done "for a variety of reasons, with full and legitimate intent to return and claim the baggage"]; *United States v. Sanders* (6th Cir. 1983) 719 F.2d 882, 884, 886 [no abandonment where defendant explained that she left the suitcase at the baggage claim because she was not going straight home]; *People v. Baker* (2008) 164 Cal.App.4th 1152, 1159–1161 [sole female passenger's "[s]imply getting out of the car . . . does not constitute abandonment" of the "distinctly feminine

11

purse" at her feet on the floorboard].) An airline and its baggage claim are effectively bailees of checked baggage, but there can be no claim that crashing a vehicle into a residence and leaving it creates a bailment. Nor does fleeing the scene without the vehicle or lockbox preserve the proximity that might otherwise have supported an expectation of privacy in the lockbox in its trunk.

**B.** *The Order Admitting Rodriguez to Probation*

On June 22, 2023, the trial court issued and filed an order admitting Rodriguez to probation, signed by Rodriguez and the trial judge. The order reflected that, by agreement of the parties, Rodriguez would serve one day in county jail, satisfied by credit for time served. As shown in the clerk's minutes and the record of the oral proceedings, Rodriguez was personally present, was not in custody, and was not remanded into custody. At a review hearing about two months later, Rodriguez was again personally present, not in custody, and his trial counsel reported that Rodriguez was "complying with [p]robation, making his appointments and being tested."

But Rodriguez contends on appeal that between these two hearings, on June 29, 2023, the trial court issued another order "committ[ing him] under . . . section 1170, [subd.] (h)(5)(B)" to the county jail for 730 days, of which 540 days of the sentence were suspended. Asking to be "free[d] . . . from custody," Rodriguez implies in his appellate briefs that he remains in jail subject to this putative commitment order, despite the file-endorsed probation order, oral proceedings, and clerk's minutes we have described.

Not so. Having no part in the settlement agreement, the probation department submitted the putative commitment order to the trial court as part of its May 2023 presentence report, recommending a "midterm [sentence] of two years," of which Rodriguez would "serve an initial sentence of six months in county jail with the balance of 18 months to be reserved for community supervision." Unlike the June 22, 2023 order, the putative commitment order was neither file-stamped nor signed by Rodriguez. The putative commitment order does bear a typewritten date and apparent digital

12

signature on the trial judge's signature line. The filed probation order—beyond its substantive terms—differs as to form in that the date is handwritten and the trial judge's name is stamped on the document below the signature.

On this record, we decline to infer that the trial court issued the putative commitment order, based solely on the presence of an errant digital signature on a proposed order that was never file-endorsed, when that order corresponds to no hearing date and conflicts with both the file-endorsed probation order and the record of oral proceedings. Nor will we direct the correction of an order that never issued, other than to make clear its nullity.[12]

### III.   DISPOSITION

The judgment is affirmed. The clerk of the superior court is directed to strike the digital signature and signature date from judge's signature line of the proposed order included with the presentence report filed on May 5, 2023.

---

[12] Both the inclusion of what appears to be a digital signature on the trial judge's signature line on the proposed order and the inclusion of the confidential May 2023 presentence report in the publicly available Clerk's Transcript Corrected are matters of administrative concern. This court has removed the presentence report from its publicly accessible records and redesignated it as confidential. We presume that the superior court's inclusion of the presentence report in the publicly available Clerk's Transcript Corrected was inadvertent and does not reflect the availability of the presentence report in the superior court's own records.

_____

LIE, J.

WE CONCUR:

_____

GROVER, Acting P. J.

_____

RODRIGUEZ, J.*

*People v. Rodriguez*
H051398

---

*Judge of the San Diego County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.